HENRIETTA CARTWRIGHT, Plaintiff and Respondent, v.
ALICE JOYCE, Executrix of the Estate of Elmer E.
Preuninger, deceased, Defendant and Appellant.

No. 11738.

Aug. 5, 1970.

473 P.2d 515.

Mulroney, Mulroney & Delaney, Missoula, Stephen H. Dalby argued, Missoula, for appellant.

Michael T. Greely, Great Falls, Dola N. Wilson, Jr. argued, Fort Benton, for respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an action on a rejected creditor's claim against an estate for wages and reimbursement of expenses claimed to be owing plaintiff by decedent. The district court of Missoula County, the Hon. E. Gardner Brownlee, district judge sitting without a jury, granted judgment to plaintiff for the full amount of her claim together with an award of attorney's fees to plaintiff's attorney. From this final judgment of $4,076.25, denial of a motion to amend the findings of fact and conclusions of law, and denial of a motion for a new trial, the executrix appeals.

Plaintiff is Henrietta Cartwright who was employed as a clerk and bookkeeper in the hardware store of decedent Elmer E. Preuninger in Geraldine, Montana, for about 17 years prior to December 1961, when the majority of his stock in trade was liquidated. Some sales activity continued in decedent's

business until March 1962, at which time the doors of decedent's business were closed for all practical purposes. From December 1961 until March 1962, plaintiff continued in decedent's employ, receiving her final paycheck from decedent in March 1962. At various times from April 1962, until decedent passed away in March, 1968, plaintiff engaged in various activities related to decedent and his personal financial affairs. Plaintiff's services can generally be described as bookkeeping and handling the various details of decedent's business and financial affairs.

Decedent had become ill and was hospitalized at least part of the time between October and December 1961 Although the evidence is not entirely clear, decedent was apparently hospitalized again sometime in 1962. Decedent eventually moved to Missoula in 1963 and initially stayed with his sister, Alice Joyce, but later moved into the Hillside Manor, a retirement home in Missoula. Upon his death in 1968, Alice Joyce became executrix of his estate.

There was no written agreement between decedent and plaintiff relating to compensation for her services or reimbursemnt for expenses incurred. The record discloses no demand by plaintiff or decedent during his lifetime for payment therefor. According to plaintiff, her employment by decedent was never terminated by him following closure of his mercantile business in March 1962, although she admits receiving no paycheck from decedent thereafter.

Alice Joyce wrote to plaintiff about April 10, 1963. This letter stated, among other things:

"Elmer has sold mothers place, says it is one less chore for you—Marcus Nichols bought it. This check, Elmer wants it divided evenly between the four heirs—Edith, Lee, Elmer and myself—that is $4,000 each—Elmer said to tell you to write yourself a check for what he owes you & mail out ours & deposit his there  *  *  *."

On April 18, 1963, plaintiff made a trip from Geraldine to Missoula concerning the sale of this land. On the same date

plaintiff received a check from decedent for $3,700 which plaintiff testified was a gift. From time to time thereafter plaintiff received from decedent several checks in varying amounts totalling about $300, all of which plaintiff testified were gifts.

Decedent died on March 16, 1968 in Missoula. Following his death Alice Joyce filed a petition for probate of decedent's will dated December 1, 1965. Under the terms of this will, Alice Joyce was named executrix. Specific bequests were made to various persons, one of which was a cash bequest of $1,000 to plaintiff. The residue of the estate was given in equal shares to Alice Joyce and Lee Preuninger, a brother of decedent. As the brother had predeceased decedent, Alice Joyce became the sole residuary legatee of the estate, appraised at approximately $75,000.

Plaintiff thereafter filed a will contest which was eventually settled out of court, prior to trial of the instant case. Following settlement, the will was admitted to probate and Alice Joyce was appointed executrix. Thereafter plaintiff timely filed her creditor's claim covering her services rendered on his behalf during the period from May 1962 to the date of death, which also included some expenses in connection with the funeral. Her claim for services was computed on the basis of $25 per month from May 1962 to the date of decedent's death in March 1968. Her total claim for services and reimbursement of expenses amounted to $3,076.25.

The entire claim was rejected by the executrix. Thereupon plaintiff filed suit to collect the claim together with a reasonable fee for the services of her attorney. The answer of the executrix set up seven defenses: (1) failure to state a claim upon which relief can be granted, (2) a general denial, (3) that any services rendered were a gratuity or alternatively of no economic value, (4) the bar of the statute of limitations, (5) laches, (6) waiver, and (7) that the absence of a written agreement bars the claim. Plaintiff's motions to strike the last four defenses were denied by the court as was defendant's motion to dismiss the complaint.

The matter came on for trial on June 12, 1969 before Judge Brownlee, sitting without a jury. The testimony at the trial was confined to two witnesses, plaintiff and the executrix. Documentary evidence was introduced consisting of various letters from the executrix and her attorney to plaintiff, a letter from plaintiff to decedent, various checks from decedent to plaintiff, and journal and ledger books kept by plaintiff concerning decedent's financial affairs. Following trial, the court took the case under advisement. On June 16 the court entered its findings of fact and conclusions of law favoring plaintiff. On July 3 judgment was entered in accordance with these findings and conclusions. Plaintiff was awarded judgment for the full amount of her claim and her attorney was awarded judgment of $1,000 as attorney fees.

Thereafter the executrix filed a motion to amend the court's findings of fact and conclusions of law and a motion for a new trial, both of which were denied. This appeal is from the final judgment and the court's denial of these two motions.

There are four underlying issues on this appeal which can be summarized in this manner: (1) Sufficiency of the evidence to support plaintiff's claim. (2) Does the statute of limitations bar plaintiff's claim? (3) Was plaintiff's claim discharged by payment? (4) Is the award of an attorney's fee permissible?

On the first issue, defendant argues that plaintiff can only recover on an express contract or on a quantum meruit basis. She contends that any express contract of employment was terminated in March 1962, when decedent's hardware store closed its doors, plaintiff received her final paycheck, and plaintiff ceased her employment as a clerk therein. Neither can plaintiff recover on quantum meruit or on implied contract basis, the executrix alleges, because this requires proof of fault, misconduct or advantage taken by decedent of plaintiff, none of which are present here. Therefore, plaintiff's claim fails in the instant case, according to defendant.

We need not dwell at length on the express contract argument. There is simply no evidence of an express contract of employment after March 1962. Any prior express contract of employment was clearly terminated by the closing of the hardware store and discontinuing plaintiff's salary checks.

Defendant contends there is insufficient evidence to support plaintiff's claim on an implied contract or quantum meruit theory in that there is a complete failure of proof of any fault or misconduct on decedent's part in his dealings with plaintiff or that he took advantage of plaintiff in any way. Defendant cites Brown v. Thornton, 150 Mont. 150, 156, 432 P.2d 386, 390 in support of her argument:

"* * * Since it appears that plaintiff never had any dealings at all with defendants he must rely, as he does, on a contract implied in law or *quasi*-contract. The obligation in such a contract arises not from consent of the parties but from the law of natural justice and equity, and is based on the doctrine of unjust enrichment. (Citing cases) For a contract to be implied at law on the basis of unjust enrichment the plaintiff must show some element of misconduct or fault of some sort on the part of the defendant, or that he was in some way taken advantage of. (Citing authorities)"

Our holding in *Brown* is not germane to the instant case. There the plaintiff, who supplied building materials to the landowner on credit, sought to hold liable the landowner's parents, with whom he had no dealings, for the value of the building materials. The basis on which liability was sought to be imposed was that the parents ultimately received the benefits of the building materials by subsequently accepting a conveyance of the land from their son in discharge of a mortgage they held on the property. The district court granted defendant's motion for summary judgment and we affirmed. Liability there was sought to be imposed on the basis of a contract implied in law, i. e. a quasi-contract, bottomed on unjust enrichment of the parents.

484

· Such is not the instant case. Here liability is based on a contract *implied in fact* from the direct dealings of the parties and the surrounding circumstances. No contract *implied in law* predicated on quasi-contract, unjust enrichment, or restitution is involved. The distinction is clearly expressed in French v. County of Lewis and Clark, 87 Mont. 448, 455, 288 P. 455, 457:

"A contract may be either express or implied (citing code section), the latter being one the existence and terms of which are manifested by conduct (citing code section); but there is a third class of obligation, not properly a contract at all, but which, for lack of a better term, is referred to as a 'quasi contract.' 'Contracts implied in law or more properly quasi or constructive contracts are a class of obligations which are imposed or created by law without regard to the assent of the party bound on the ground that they are dictated by reason and justice and which are allowed to be enforced by an action *ex contractu.*' (13 C.J. 244)".

In the instant case liability is founded on an implied contract. Section 13-603, R.C.M.1947, defines an implied contract as one "the existence and terms of which are manifested by conduct", i. e. a contract implied in fact. The evidence, though conflicting, is substantial, credible, and supports the existence of such implied contract. Plaintiff's exhibit 4, a letter from Alice Joyce to plaintiff in April 1963, indicates decedent's intention to pay plaintiff for her services and expenses. Alice Joyce's own testimony, upon questioning by her attorney, likewise supports the existence of an implied contract:

"Q. I don't think you quite understand my question. Did Henrietta indicate to you she was going to charge Elmer money? A. I don't know whether she said it to me or not, Elmer understood she was to be paid.

"MR. WILSON (plaintiff's attorney): Object to any statement—

"THE COURT: Sustained

"Q. You just testify what Mrs. Cartwright told you, if she told you anything. Did she ever tell you that she was going to charge Mr. Preuninger for the work she was doing for him while he was here in the Hillside Manor, or did she say she wasn't going to charge, or what was the situation? A. Oh, no, she didn't say anything about charging. I think that was understood between she and Elmer."

The further fact that plaintiff kept a detailed record of her services and expenses supports an inference that she intended to be paid for them. There are, of course, contrary indications in the evidence. At most, these create only a conflict in the evidence which was resolved by the district court as trier of the facts.

For the foregoing reasons, we hold that the evidence is sufficient to support plaintiff's claim.

Proceeding to the second issue, defendant contends that the five year statute of limitations on oral contracts bars payment to plaintiff for any services performed and expenses incurred more than five years prior to institution of suit in the instant case. Defendant takes the position that as the judgment here includes payment for services and expenses rendered more than five years prior to suit, as well as services and expenses within the five-year period, the entire judgment is erroneous and must be set aside.

The critical question is when the five year statute of limitations contained in section 93-2604(1), R.C.M.1947 begins to run. There is substantial divergence of authority as to when the statute of limitations begins to run against a claim for services rendered over an extended period of time where, as here, the term of employment is indefinite and the time of payment is not expressly provided for. For a collation of cases from other jurisdictions on this point under a wide variety of circumstances, see 7 A.L.R.2d 198, and 1 A.L.R.2d, Later Case Service, 669, 670. The general rule adduced from these cases is that the statute of limitations begins to run from the time when

an enforceable claim accrues, the divergence in result depending on whether the contract is construed as being a single and entire hiring, a periodic employment, or a severable employment for each particular act of service. The conflict arises in application of this general rule to the individual case under a wide variety of circumstances.

Directing our attention to the instant case, it is apparent that there was an actual hiring of plaintiff by decedent as a bookkeeper and clerk in connection with decedent's business and financial affairs. It is equally apparent from the record that the duration of such employment and the time of payment of salary or wages was not expressly agreed upon between the parties. Certain inferences can be drawn, to be sure, concerning the parties' own understanding as to when payment was to be made. For example, the letter of April 1963 from decedent to plaintiff advising her that decedent told plaintiff to write herself a check for what decedent owed her indicates decedent's intention to make at least periodic payments for her servics. while plaintiff's testimony that she performed prior services and incurred prior expenses on decedent's behalf together with her testimony that she did not write herself a check at that time because decedent did not owe her anything might indicate a contrary understanding of the time of payment on her part. At most, the circumstances indicate no meeting of minds between decedent and plaintiff as to the time of payment.

Under our statutory master and servant laws, section 41-403, R.C.M.1947, provides:

"In the absence of any agreement or custom as to the term of service, the time of payment, or rate or value of wages, a servant is presumed to be hired by the month, at a monthly rate of reasonable wages, to be paid when the service is performed."

This is precisely the situation in the instant case. Thus plaintiff's claim for the various services she performed for decedent accrued monthly, and the statute of limitations commenced

running at the end of each month for services performed during that month. The same reasoning is applicable to reimbursement for plaintiff's expenses, the statute being broad enough to cover expenses incurred by plaintiff in connection with her employment for the benefit of her employer

When was the statute of limitations tolled on the individual items of plaintiff's claim? Upon decedent's death; upon the appointment of the executrix; upon presentation of the creditor's claim to the executrix; or, upon filing the instant suit?

The controlling statute is section 93-2704, R.C.M.1947, providing in pertinent part:

"* * * If a person against whom an action may be brought dies before the expiration of the time limited for the commencement thereof, and the cause of action survives, an action may be commenced against his representatives after the expiration of that time, and within one year after the issuing of letters testamentary or of administration."

The purpose and construction of a statute such as this is set forth in Banc.Prob.Prac.2d § 882, p. 717:

"It is the settled purpose of provisions of this nature to extend, and not to shorten, the time to sue. They are construed to mean that a creditor shall have at least one year after the issuance of letters upon his debtor's estate in which the general statute of limitations cannot apply to his demand, provided the general statute has not run against the demand prior to the death of the debtor and no matter how short a period then remained in which to sue."

In Montana, it has been held that although the statute of limitations does not cease to run on account of the death of a judgment debtor, the time between his death and the issuance of letters to administraation is not to be counted as part of time within which an action must be commenced. Whiteside v. Catching, 19 Mont. 394, 48 P. 747; Davis v. Estate of Davis, 56 Mont. 500, 185 P. 559.

██ Applying the foregoing principles to the instant case, we note the decedent died on March 16, 1968 and that letters testamentary were issued in his estate on August 20, 1968. This period of 5 months and 4 days is excluded from the period of time in which an action must be commenced. Suit was filed on the rejected creditor's claim on April 14, 1969. This period of 7 months and 25 days is not excluded. As it is the filing of the action on the rejected creditor's claim that tolls the statute of limitations, the time when the claim was presented to or rejected by the executor or administrator is immaterial.

Thus we have a period of 7 months and 25 days after the death of decedent that must be included in the five year limitation period This leaves a period of 4 years, 4 months and 5 days prior to decedent's death during which accrued claims for services and expenses are not barred. Accordingly, we hold that items of plaintiff's claim covering services and expenses that accrued prior to November 11, 1963 are barred by the five year statute of limitations contained in section 93-2604(1), R.C.M. 1947. This eliminates all services and expenses on the claim for 1962 in the amount of $248.60 and $530.69 of the claim for 1963, thereby reducing plaintiff's recovery thereon from $3,076.-25 to $2,296.96.

██ While this renders the judgment entered by the district court erroneous as to the total amount, it does not follow that the entire judgment must be vacated and set aside or a new trial granted. Although entry of a judgment on a claim partially barred by the statute of limitations is error (Brion v. Brown, 135 Mont. 356, 340 P.2d 539, and cases therein cited), where the claim is divisible into separate items and such items as are barred can be segregated from those that are not, no reason appears why we cannot modify the judgment accordingly. Paragraph number 1, of the judgment is ordered amended by striking the words and figures ''Three Thousand Seventy-Six Dollars and Twenty-five cents ($3,076.25)'' and substituting ''Two Thousand Two Hundred Ninety-six Dollars and Ninety-six cents ($2,296.96).''

The executrix next contends the district court erred in failing to hold that plaintiff's claim had been paid in full. She argues that plaintiff admits receiving from decedent checks totaling about $4,000 under circumstances supporting an assumption that they were given in compensation of services rendered and expenses incurred for decedent, and that the presumption they were given as payment was not overcome by clear and convincing proof to the contrary.

The district court's finding of fact on this point reads as follows:

"That although the plaintiff signed checks for Mr. Preuninger, she never made one out to herself for any wages although she did receive several checks totaling about Four Thousand Dollars ($4,000.00) signed by Mr. Preuninger, which the testimony shows were gifts."

Thus our determination is confined to whether there is substantial credible evidence supporting this finding. State Highway Comm. v. West Great Falls F.C. & D.D., 155 Mont. 157, 468 P.2d 753, 27 St.Rep. 320, and cases therein cited. The quantum of proof necessary to support this finding of gift is set forth in Detra v. Bartoletti, 150 Mont. 210, 218, 433 P.2d 485, 489, in the following language:

"The burden is one of establishing the gift by clear, convincing, strong and satisfactory evidence. It is to be done with more than a mere preponderance of the evidence. (Citing authority.)"

Defendant contends the evidence falls far short of this standard, being confined to the unsupported testimony of plaintiff that the checks were gifts. But does it? We think not. Additionally, there is a total absence of evidence that decedent was indebted to plaintiff in any amount remotely approaching $3,700 on April 18, 1963 when that check was given to plaintiff. All evidence in the record is to the contrary. Additionally, decedent's income tax returns subsequent to 1962 apparently

showed no deductions for any wages or salary to plaintiff as is shown by the following exchange between defendant's attorney and plaintiff during the latter's cross-examination:

"Q. It's a fact, is it not, that after 1962 according to the copies of the income tax returns which you had at your disposal, that no such payroll deductions were taken, is that correct? A. You wouldn't take them if the wages hadn't been paid yet, would you?

"Q. Well, I am asking you whether or not they were taken or not? A. No."

Opposed to this evidence, defendant cites only the presumption that a check is given in payment of a debt and that gifts will not be presumed but must be proven by clear, strong and satisfactory evidence amounting to more than a mere preponderance. We deem the evidence, above indicated, to overcome these presumptions and to satisfy the necessary quantum of proof of a gift.

Directing our attention to the final issue for review, defendant contends that the award of attorney's fees is erroneous because (1) there is no statutory authorization for such award, (2) plaintiff failed to file a cost memorandum including attorney's fees, and (3) the award was made directly to plaintiff's attorney who was not a party to the action.

Defendant argues the award of attorney's fees under section 45-601 et seq., R.C.M.1947, is erroneous for a variety of reasons and that such award is not sustainable under any other provisions of Montana law. We need not pause to review all the arguments advanced as to why attorney's fees are not sustainable under section 45-601 et seq., as those sections deal exclusively with claims of employees against an employer who makes an assignment for the benefit of creditors. McBride v. School District No. 2, 88 Mont. 110, 290 P. 252.

However, we believe that an award of attorney's fees is authorized in the instant case under section 41-1306, R.C.M.1947 providing as follows:

"Whenever it shall become necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due, as provided for by this act, then such judgment shall include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in the case."

Recovery of attorney's fees under this statute is limited to actions maintainable under Chapter 13, Title 41, R.C.M.1947 (codified as section 41-1301 et. seq.). Therein payment of wages is required from "Every employer of labor in the State of Montana"; employer is defined therein as "any individual * * * acting directly or indirectly in the interest of an employer in relation to any employee"; employee is defined as including "any person who works for another for hire"; and "wages" is defined as including "any moneys due an employee from the employer * * * whether to be paid by the hour, day, week, semi-monthly, monthly or yearly * * *".

Originally this chapter did not include any of the above definitions. It was during this period of time that the cases of McBride v. School District No. 2, supra, and Britt v. Cotter Butte Mines, 108 Mont. 174, 89 P.2d 266, were decided. The former case held that a school district did not qualify as an "employer of labor" and a school teacher did not qualify as an employee under the statute as it then existed, so attorney's fees were not allowable in her suit to recover wages. The latter case dcided in 1939 held the contrary as applied to a watchman, messenger, and general repairman in a mine.

Thereafter in 1941 the legislature amended the act to include the above definition, broadening the scope of who was an employer, who was an employee, and what were wages. In so doing the former restriction to manual laborers and their employers was eliminated. Plaintiff, as a clerk and bookkeeper for decedent, qualifies as one to whom an award of attorney's fees is authorized in an action for wages for her services under the amended act

██ The argument is next made that the award of attorney's fees is unauthorized because plaintiff did not include such award costs in her memorandum of costs and disbursements filed after judgment. Here the controlling statute set forth above requires that "such judgment shall include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in the case." Here the judgment itself covers the award of attorney's fees and such award is made directly to plaintiff's attorney rather than to plaintiff herself, so the argument is made that the statute was not observed and the award of attorney's fees is improper. Under such circumstances, how could plaintiff file a cost bill covering an award of attorney's fees to someone other than herself?

We consider this entire issue "a tempest in a teapot" unrelated to the merits of the case or the substantial rights of the parties. This entire controversy can be resolved without prejudice to any substantial right of either party by striking paragraph numbered 2. in the judgment and substituting the following:

"2. That plaintiff is hereby awarded the sum of $1,000.00 as a reasonable attorney's fee for the services of her attorney herein, which is hereby taxed as costs in her favor."

Without further ado, it is so ordered.

The foregoing modification likewise eliminates defendant's third argument on this issue to the effect that the award of attorney's fees directly to the attorney who is not a party to the suit is unauthorized.

The judgment of the district court is ordered modified in the foregoing respects and as modified, it is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN C. HARRISON and DALY concur.

MR. JUSTICE CASTLES (dissenting).

I dissent.

First, as to attorney fees, the majority opinion has no difficulty here, since it terms it all "a tempest in a teapot". It then strikes from the judgment and substitutes a new judgment. It overlooks the need for filing a cost bill. It readily admits that the trial court was wrong in using section 45-601 et seq., but then finds section 41-1306 applicable. I believe that what is described here as services as a bookkeeper and expenses is not labor at all, but merely professional services. Thus no attorney fees are allowable.

Further, as to the evidence on finding gifts, I believe it is totally lacking as clear, convincing, strong and satisfactory.

I have no particular quarrel with that part of the opinion dealing with the statute of limitations.