DANIEL L. POPE, Plaintiff and Appellant, *v.* PHILLIP R. KEEFER, Defendant and Respondent.

No. 14158.
Submitted Oct. 19, 1978.
Decided Feb. 28, 1979.
As Modified on Denial of Rehearing.
March 15, 1979.

Hilley & Loring, David Paull (argued), Great Falls, for plaintiff and appellant.

Morrow, Sedivy & Olson, Thomas A. Olson (argued), Bozeman, for defendant and respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

Plaintiff appeals from a judgment of the District Court of the Sixth Judicial District, Park County, denying his claim for unpaid wages and the penalty thereon and for attorney's fees incurred in pursuit of his claim.

At the October 27, 1977, hearing before the Honorable Jack D. Shanstrom, sitting without a jury, evidence was presented which showed that plaintiff Pope, then a single man thirty years old, resided with and worked as a farm hand for the Keefer family from the beginning of November, 1969, through April, 1975.

The testimony regarding the circumstances under which Pope came to reside with and work for Keefer varies. Plaintiff testified that he was looking for a job after his discharge from the Navy, which he entered after graduation from high school. In the company of a "cousin", he went to the Keefer ranch near Clyde Park, Montana, to ask about work. Defendant's testimony was that Roland Bratland, the "cousin", who in fact was not related to Pope but to his foster parents, brought Pope to the ranch and asked Keefer to take in plaintiff and "try to learn him something". The Bratlands had sold their ranch and moved to town, so there was no place for them to keep Pope, according to defendant's recollection of the conversation which he had with Bratland only.

Plaintiff claims that he and defendant entered into an oral contract whereby he would work for defendant in return for $100 per month plus room and board. At the same time, however, Pope testified that the deal was that the Keefers would give him spending money, pay his insurance premiums, and provide his room and board. Defendant maintains that the latter account is correct, that he agreed to provide room and board and spending money and to pay insurance premiums for plaintiff; he recalls no agreement to pay wages to plaintiff.

While at the ranch, under Keefer's supervision, plaintiff performed various tasks, including feeding farm animals, milking cows, mending fence, helping with branding and planting and harvesting crops. During all but the first few months of his stay at the ranch, Pope lived in the Keefer home, ate meals with the family, had his mending and laundry done by Mrs. Keefer, and in many respects was treated like one of the family. While there, he was relatively free to come and go as he pleased, depending on the work to be done, and took advantage of that freedom some weekends and during holiday periods. Keefer and his wife provided him with spending money and bought him clothes, boots and the like as he needed them. They also paid certain of his medical bills and paid for miscellaneous items, for example haircuts, and paid his insurance premiums.

Keefer issued state and federal W-2 forms for plaintiff in the amount of $1200 per year during the years 1970-1975 inclusive. During that time Keefer claimed, as a business expense, $3,453.34 which had been expended on Pope as compensation for the work he had done. Never was plaintiff claimed on the Keefers' tax returns as a dependent.

During the hearing, two witnesses, one who holds a Master's Degree in counseling and who was called by defendant, and the other, a clinical psychologist with a Ph.D. called in rebuttal on plaintiff's behalf, testified that Pope has a full-scale I.Q. of 80, measured on the Wechsler Adult Intelligence Scale. That I.Q. measurement indicates that he is below average in ability, in approximately the lowest 9/11th percentile of the adult population of the United States, but is not so impaired mentally as to be unable to engage in competitive, gainful employment, within a limited range of possibilities. As proof of that, Pope had been employed as a meat cutter in Helena for the two years prior to the hearing. The testimony of these witnesses differed slightly in one respect: defendant's expert, the counselor, who examined Pope in 1971, stated that he believed Pope's lack of motivation, coupled with his mental condition, somewhat limited his ability to find work in the competitive market; plaintiff's expert, the psychologist, who examined Pope in 1976, found that while Pope was limited in virtue of his below average I.Q., he nonetheless would be competitive in the farm labor market.

After Pope quit working at the Keefer ranch, he was advised by his foster parents to see a lawyer about the matter which has come before this Court. That lawyer, not now representing Pope, filed a claim, which has not been pursued, with the state Department of Labor. A complaint was filed on July 22, 1976, in the District Court of Lewis and Clark County, by which plaintiff sought to recover $11,926.40, a sum which represents the unpaid and owing portion of the $14,566.40 in wages he claims he was entitled to receive under Montana's Minimum Wages and Hours Act, sections 41-2301 through -2307, R.C.M.1947, now sections 39-3-401

through -408 MCA, for the work he performed on the Keefer ranch over the four and one-half years he was there.

After a change of venue, the matter was heard by Judge Shanstrom in the District Court of Park County, who determined that Pope was an employee who was not covered by the wage and hours act, being excluded from its coverage by section 41-2304(d) and (f), R.C.M.1947, now section 39-3-406(4) and (6) MCA. (The court's conclusion of law mistakenly cites subsection (e) instead of (f), which error can be corrected easily.) The court further found that plaintiff had "no claim for penalty or attorney fees." The District Court also found that "plaintiff has failed to exhaust his administrative remedies before the Montana Department of Labor and Industry, as provided by Section 82-4216 [R.C.M.1947]", and that his claim was "barred because Complaint was not filed within the time provided by law." The court also barred defendant's counter claim for damage to his pickup and tractor, which resulted from plaintiff's careless operation of them, because of the running of the statute of limitation. This latter determination has not been appealed.

On appeal, plaintiff advances four issues, contending that the District Court erred in concluding as a matter of law that (1) he was excluded from the operation of the minimum wages and hours act; (2) his claim was barred by the statute of limitations; (3) his claim was barred for failure to exhaust administrative remedies; and (4) he had no claim for penalties and attorney fees.

Plaintiff points out that defendant failed to set forth and designate as such certain affirmative defenses or avoidances, as required by Rule 8(c), M.R.Civ.P. Although defendant failed to raise as affirmative defenses or avoidances any of the exclusions in section 41-2304, R.C.M.1947, now section 39-3-406 MCA, the District Court nonetheless, and over plaintiff's strenuous objections, admitted testimony regarding the exclusions relating to dependants (section 41-2304(d), R.C.M.1947) and handicapped workers (section 41-2304(f), R.C.M.1947). Plaintiff contends that all such evidence was improperly admitted and that, therefore, the Distict Court could not entertain it in rendering its decision.

In response defendant calls our attention to Rule 15(b), M.R.Civ. P.:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleasings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

Defendant argues that Rule 15(b), considered in conjunction with Rule 51, M.R.Civ.P., which states in part that no error in the admission of evidence is ground for vacating, modifying, or otherwise disturbing a judgment unless refusal to do so appears inconsistent with substantial justice, will allow the District Court determinations to stand.

Commenting on federal rule 8(c), identical to the corresponding Montana rule 2A Moore's Federal Practice ¶ 8.27[3] states:

"If an affirmative defense is not pleaded it is waived to the extent that the party who should have pleaded the affirmative defense may not introduce evidence in support thereof, unless the adverse party makes no objection in which case the issues are enlarged, or unless an amendment to set forth the affirmative defense is properly made."

In the instant case the adverse party indeed objected to the introduction of evidence in support of the affirmative defenses; moreover, defendant did not amend the pleadings so as to set forth those affirmative defenses, on which he attempted to rely at hearing. We

are reluctant to set aside findings on this basis, however, especially in those cases, such as this one, in which prejudice to the complaining party does not appear in the record.

We have time and again articulated the rule that the Supreme Court will not disturb the trial court's findings unless there is a clear preponderance of evidence against those findings, e.g., *Spencer v. Robertson* (1968), 151 Mont. 507, 511, 445 P.2d 48, 50, and cases cited therein, but in those instances where error is manifest, it is the duty of the reviewing court, in furtherance of justice, to set aside the findngs. See, e. g., *Kasala v. Kalispell Pee Wee Baseball League* (1968), 151 Mont. 109, 116, 439 P.2d 65, 69. In those cases in which erroneous findings have been made the basis of erroneous conclusions of law, it follows that the conclusions also must be set aside. "The power vested in this court to review decisions carries with it the power to revise, reverse or remand any decision that we believe to be contrary to the evidence . . ." *In re Braggs' Estate* (1938), 106 Mont. 132, 155, 76 P.2d 57, 68.

In the instant case we find error is properly charged for the following reasons. Assuming *arguendo* that the evidence was properly admitted, it fails to support the District Court's findings and conclusions on the matters. Those findings relative to section 41-230 (d), R.C.M.1947, now section 39-406(4) MCA, which excludes "[i]mmediate members of the family of an employer or persons dependant upon an employer for half or more of their support in the customary sense of being a 'dependent' ", are as follows:

"6. That, in addition to providing spending money, paying insurance premiums and board and room, the Defendant's wife did Plaintiff's laundry and mending of clothes, and Defendant under advice of an accountant, paid Social Security payments on behalf of the Plaintiff calculated on an estimated $100.00 per month as value of board and room, and Plaintiff further resided in Defendant's home and was in all respects treated as a member of the family."7. That Plaintiff did at intervals of his own choosing leave the Defendant's premises and either go to Helena or elsewhere, but would return to the Defendant's home and was dependent upon

Defendant to provide for more than half of his care and maintenance and was treated as a member of the Defendant's family."

The court found that Pope was "treated as a member of the Defendant's family", not that he was a member of the family. There is no dispute that plaintiff is *not* a member of defendant's immediate family. The court clearly must have based its finding on the unspoken legal determination that Pope was a "dependent" in the "customary sense". But was he?

Essential to a determination that Pope was a dependent is a prior finding that he was dependent on Keefer for half or more of his support. As defendant rightly notes, during the time that plaintiff stayed at the ranch, the Keefers provided all of his support. But it must be remembered that Pope was working at the ranch all the while he was being supported, and a fair inference is that the support was given, not because Pope was a dependent of the Keefers in any customary sense, but in exchange for the work he performed.

Assuming that defendant did provide half or more of the support of plaintiff, was Pope a dependent in the customary sense? Putting aside the difficulty of defining what is "customary", let us examine a definition of the term "dependent". The term is most often defined in workers' compensation cases, which, admittedly, arise in radically different factual circumstances. The Utah Supreme Court has defined the word thus in a workers'. compensation case:

"A dependent is one who looks to another for support, and the true criterion is whether one has a reasonable expectation of continuing or further support—to receive such contributions as are necessary and needed to maintain him in his accustomed station in life. [Citations omitted.]" *Park Utah Consolidated Mines Co. v. Industrial Comm'n* (1934), 84 Utah 481, 36 P.2d 979, 982.

Montana workers' compensation cases speak in terms of a dependent being "entitled" to support. See, e. g., *Edwards v. Butte & Superior Mining Co.* (1928), 83 Mont. 122, 128, 270, P. 634, 637.

It stretches credibility to maintain that Pope could reasonably expect Keefer to support him in his accustomed station of life—that he was *entitled* to Keefer's support—especially after Pope

462

quit working for the Keefers. That Keefer should not be expected to support Pope lends force to the argument that Pope was not and is not now a dependent of defendant, but was an employee of defendant. Accordingly, Pope cannot be said to have been a dependent of defendant so as to come within the exception of section 41-2304(d), R.C.M.1947, now section 39-3-406(4) MCA.

To be entertained next is whether Pope's employment was excluded from the Minimum Wages and Hours Act in virtue of his being a handicapped worker "whose earning capacity is so severely impaired that [he is] unable to engage in competitive employment." Section 41-2304(f), R.C.M.1947, now section 39-3-406(6) MCA. Both expert witnesses denied that such was the case; both stated that, within limits, Pope could engage in competitive employment. Pope, too, testified to that effect, stating that he was then employed as a "yard man" doing meat cutting for a Helena restaurant. Previously he had been in the Navy, where he scrubbed decks and painted; he had also been employed as a janitor and as a dishwasher. Pope could not be said to *not* be self-sustaining, again within limits set by his mental capacity. It was made clear from the testimony of Pope, the two experts, and others that plaintiff is capable of working and functioning with society in a manner to be characterized as substantially self-sustaining. Substantial credible evidence in the record reveals that the District Court's conclusion, that Pope was a handicapped worker of the sort exempted from the operation of the wages and hours act so as not to be entitled to any further wages, was erroneous.

Because we find error in the determination that plaintiff is a handicapped worker, we need not reach plaintiff's charge that defendant violated a provision of the Administrative Rules of Montana, 23-3.14BII(10)—S14020:

"APPLICATIONS FOR CERTIFICATE. Applications for employment under special certificate of handicapped workers at wages lower than the minimum wage applicable under section 41-2303 R.C.M.1947 of the Act must be approved by the Department of Social and Rehabilitative Services, Institutions caring for

the handicapped, or individuals must seek application from the Commissioner of Labor."

■ Plaintiff contests the District Court's finding that his claim was barred by the statute of limitations, alleging that his claim is grounded in the concept of implied contract and so is controlled by section 93-2604(1), R.C.M.1947, now section 27-2-202(2) MCA, which provides a five-year limitation on actions on a contract or promise not founded on an instrument in writing. This action for a wage claim was commenced on July 22, 1976. Plaintiff worked for defendant from approximately November 1, 1969, to May 1, 1975. He asks that he be compensated for the work done during the entire period. It is evident, however, that a portion of his claim is barred by the statute. Another portion—that done within the five years prior to the time that cause of action accrued—may not be barred. To be determined is when the cause of action accrued. Plaintiff argues that it accrued May 4, 1975, three days after the date he was separated from his employment, and cites section 41-1303, R.C.M.1947, now section 39-3-205 MCA, as authority. That section states:

"Whenever any employee is separated from the employ of any such employer, then all the unpaid wages of such employee shall become due and payable within three (3) days, either through the regular pay channnels or by mail if requested by the employee; provided however, that where an employer's payroll checks originate at an office outside the state of Montana the time provided herein for payment of wages shall be extended for three (3) additional days."

Plaintiff is mindful of a different conclusion drawn by this Court in *Cartwright v. Joyce* (1970), 155 Mont. 478, 473 P.2d 515. In *Cartwright* the Court found only a portion of the plaintiff's claim barred by the applicable statute of limitation; recovery for the remainder of the wages due the plaintiff was allowed. There we said:

"Proceeding to the second issue, defendant contends that the five year statute of limitations on oral contracts bars payment to plaintiff for any services performed and expenses incurred more than

five years prior to institution of suit in the instant case. Defendant takes the position that as the judgment here includes payment for services and expenses within the five-year period, the entire judgment is erroneous and must be set aside.

"The critical question is when the five year statute of limitations contained in section 93-2604(1), R.C.M.1947 begins to run. There is substantial divergence of authority as to when the statute of limitations begins to run against a claim for services rendered over an extended period of time where, as here, the term of employment is indefinite and the time of payment is not expressly provided for . . . The general rule . . . is that the statute of limitations begins to run from the time when an enforceable claim accrues, the divergence in result depending on whether the contract is construed as being a single and entire hiring, a periodic employment, or a severable employment for each particular act of service. The conflict arises in application of this general rule to the individual case under a wide variety of circumstances.

". . .

"Under our statutory master and servant laws, section 41-403, R.C.M.1947, provides:

" 'In the absence of any agreement or custom as to the term of service, the time of payment, or rate or value of wages, a servant is presumed to be hired by the month, at a monthly rate of reasonable wages, to be paid when the service is performed.'

"This is precisely the situation in the instant case. Thus plaintiff's claim for the various services he performed for decedent accrued monthly, and the statute of limitations commenced running at the end of each month for services performed during that month." 155 Mont. at 485-87, 473 P.2d at 519-20.

Applying the reasoning of *Cartwright* we find that a portion of plaintiff's claim is barred by the statute of limitation. That portion claiming wages from July 22, 1971 forward to the day Pope left Keefer's employ is recoverable.

■ With respect to the penalties recoverable thereon, section 41-1304, R.C.M.1947, now section 39-3-207 MCA, governs. That statute limits recovery for penalties thus:

"Any employee may recover all such penalties as are provided for·the violation of section 41-1302, [39-3-206 MCA], which have accured to him, at any time within eighteen (18) months succeeding such default or delay in the payment of such wages."

The statute is hardly a model of clarity, and its interpretation is subject to debate. Defendant argues that "the 18 month figure must be computed from the filing of the complaint, July 22, 1976, and any claimed penalty for wages prior to that period of time are [sic] lost by virtue of said statute." Plaintiff agrees that the date of the filing of the complaint should be used but contends that penalties are properly awarded because the date of filing is within the eighteen month period following the date of the accrual of the action, May 4, 1975. We believe that plaintiff's interpretation is correct and look to language appearing in section 41-1302, R.C.M.1947, now section 39-3-206 MCA, which states that a penalty "shall be assessed for each day, except Sundays and legal holidays upon which such failure continues after the day upon which such wages were due . . ."

Attorney fees are recoverable in an action such as this in virtue of the authority of section 41-1306, R.C.M.1947, now section 39-3-214(1) MCA:

"Whenever it shall become necessary for the employee to enter or maintain a suit at law for the recovery or collection of wages due, as provided for by this act, then such judgment shall include a reasonable attorney's fee in favor of the successful party, to be taxed as part of the costs in the case."

■ Plaintiff's third allegation of error, that the District Court erred in finding that plaintiff failed to exhaust his administrative remedy, reiterates the challenge levied earlier—defendant's failure to plead such as affirmative defense and his subsequent failure to amend the pleadings. See discussion, supra. In further support of his position, plaintiff cites authority reciting the proposition that the doctrine of exhaustion of remedies does not apply in those circumstances in which, by the terms or implications of a statute authorizing an administrative remedy, the remedy is permissive

only. *City of Susanville v. Lee C. Hess Co.* (1955), 45 Cal.2d 684, 290 P.2d 520, 523.

The applicable statute indicating that the administrative remedy available to plaintiff is permissive and not mandatory is section 41-1324, R.C.M.1947, now section 39-3-520 MCA:

"The remedy herein provided for the greater security for the payment of wages and salaries and the collection thereof shall be in addition to any remedy now provided by law for the payment and collection of wages and salaries."

Plaintiff had filed a claim during the time he was represented by other counsel. That claim was not pursued by present counsel of record, who chose instead to assert rights provided by statute.

Defendant cites us to *State ex rel. Jones v. Giles* (1975), 168 Mont. 130, 541 P.2d 355, for the proposition that a party must exhaust his administrative remedies before seeking a judicial remedy. In that case, however, we specifically found that "[the] legislature intended to eliminate the judicial remedy prescribed by [statute] until administrative remedies are first exhausted." 168 Mont. at 133-34, 541 P.2d at 357. In the instant case, the legislature has specifically declared that remedies are cumulative. Section 41-1324, R.C.M.1947, now section39-3-520 MCA. That declaration coupled with counsel's failure both to plead as an affirmative defense or avoidance the failure to exhaust administrative remedies and to so amend the pleadings compel the conclusion that the District Court erred in barring plaintiff's claim.

Finally plaintiff charges error in the District Court's failure to grant plaintiff penalties and attorney's fees. We have found that the wage claim was improperly denied thus it follows as a matter of course that penalties and attorney's fees were also improperly denied.

The record reveals that plaintiff has established the elements necessary to maintain a claim for wages under Title 41, Chapter 23, R.C.M.1947, now Title 39, Chapter 3, MCA. He was involved in a employee-employer relationship with defendant, and defendant,

however unwittingly, failed to pay plaintiff a portion of the wages owed him in virute of the minimum wages and hours act.

The conclusions of the lower court, being erroneous, are reversed, and the cause remanded to determine the amount including penalties and attorney's fees, due plaintiff.

Chapter 417, Laws of Montana 1971, an act to establish minimum wages and hours, was approved March 18, 1971, by the 42nd Legislative Assembly. Amendments to portions of the act, sections 41-2303, -2306, and -2307, R.C.M.1947, made in Chapter 363, Laws of Montana 1973, because effective January 1, 1974. This act and applicable regulations in the Administrative Rules of Montana, promulgated pursuant to section 41-2305, R.C.M.1947, now section 39-3-403 MCA, should guide the District Court and counsel in determining the amount due plaintiff.

We take judicial notice of the fact that the definition of "wage" appearing in section 41-2302(b), R.C.M.1947, now section 39-3-402(7) MCA, states, "the term 'wage' includes the reasonable cost to the employer of furnishing such employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished . . . provided however, that in no case shall such inclusion exceed an amount equal to forty per cent (40%) of the total wage paid by such employer to such employee." Pope was a "farm worker", that is, "any person employed to do any service performed on a farm or ranch", section 41-2302(f), R.C.M.1947, now section 39-3-402(5) MCA. A.R.M. 24-3.14BII(22)-S14210 defines the term "furnished" as applied to board, lodging and other facilities. The record reveals that in Montana board and lodging are customarily furnished to farm workers, who perform the kind of work that Pope did. Thus, the reasonable cost of furnishing Pope with board and lodging is to be deducted, up to the statutory limit, from the amount found due the plaintiff. To be deducted, too, are *all* amounts expended on plaintiff's behalf by defendant and his wife for the reasonable cost of additional services, including but not limited to laundry, mending, medical and dental care, and transportation, and *all* moneys expended on the goods provided to

the plaintiff. Penalties are to be assessed on the net amount due. Each party to pay its own costs.

Reversed and remanded.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY, SHEA and SHEEHY concur.