No. 79-51

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA, DEPARTMENT OF LABOR
AND INDUSTRY, LABOR STANDARDS DIVISION,

Complainant and Respondent,

vs.

ALFRED J. and JULIE F. WILSON, d/b/a
YELLOW CAB COMPANY,

Petitioner and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
In and For the County of Cascade.
Honorable John M. McCarvel, Judge presiding.

Counsel of Record:

For Appellant:

C. L. Overfelt argued, Great Falls, Montana

For Respondent:

James Gardner, Dept. of Labor, argued, Helena, Montana

---

Submitted:  April 16, 1980

Decided:  JUL 3 0 1980

Filed:  JUL 3 0 1980

Thomas J. Kearney
_____ Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Alfred J. Wilson and Julie F. Wilson, defendants and appellants, were found to be in violation of the Montana Minimum Wage and Overtime Compensation Law, section 39-3-401, et seq., MCA, in an administrative hearing before the Labor Standards Division, Department of Labor and Industry. Defendants sought judicial review in the Eighth Judicial District Court, which granted the Department's motion for summary judgment. The Wilsons bring this appeal from the summary judgment in favor of the Department.

The Wilsons operated the Yellow Cab Company of Great Falls since January 1976. On December 5, 1977, the Department of Labor and Industry initiated a field inspection of the Wilsons' payroll records. The inspection revealed that forty-six persons employed by Yellow Cab Company at various times during the years 1976 and 1977 were owed $18,020.70 in additional wages. This information was communicated to the Wilsons in a February 9, 1978 letter from Mike Stump, the Department's hearing officer, who had conducted the field inspection. The Wilsons, through their attorney, requested an administrative hearing.

An administrative hearing was held March 20, 1978. The hearings officer found that $15,639.20 in wages and $11,612.86 in penalties for failing to timely pay the wages were due. The additional wages were owed for the period between January 1, 1976 and January 1, 1978, and the penalties were assessed for an eighteen-month period from July 1, 1976 to January 1, 1978. Although there appears to be a conflict of evidence as to whether the employer-employee compensation agreement

-2-

was for a straight 43 percent commission on the fares they collected or for the greater of the minimum wage and overtime or 43 percent, the hearings officer found that the Yellow Cab Company paid its employees on a straight commission basis without regard to the minimum wage and overtime provisions. There is substantial evidence in the record of the administrative hearing to support the administrative finding and the District Court's finding that appellants' employees were paid on the basis of a straight 43 percent commission of their gross receipts. The additional wages found to be due were based on defendants' failure to pay the minimum wages and overtime required under sections 39-3-404 and 39-3-405, MCA. The hearings officer did not consider tips in calculating the gross earnings of employees.

The Wilsons brought an appeal in the District Court under the Montana Administrative Procedures Act provisions for judicial review. Upon judicial review, the District Court accepted the findings of the hearing officer and granted summary judgment ordering the defendants to pay the Department of Labor and Industry $27,252.06 for unpaid wages and penalties.

The issues presented by this appeal are:

1. Does the Labor Standards Division have authority to bring this action?

2. Are the statutory penalty provisions applicable?

3. Was the method used by the Labor Standards Division to calculate the amount of wages due to the employees lawful?

Appellants' threshold argument is that the Department of Labor and Industry does not have authority to bring this action because there never was an employee complaint or wage claim which appellants contend is essential to maintain this

-3-

action under the statutes as well as under the Department's own regulations. Contrary to this contention, the Labor Standards Division is authorized by statute to bring this action even though no complaint was filed by any of the wage earners, such employee complaint being unnecessary.

Section 39-3-407, MCA, allows the Commissioner of Labor and Industry to enforce the minimum wage and overtime compensation law without the necessity of a wage assignment and it authorizes enforcement to be treated as a wage claim action, indicating that the Department may act on its own initiative without an employee complaint:

> "Enforcement. Enforcement of this part shall
> be treated as a wage claim action and shall
> be pursued in accordance with part 2 of this
> chapter, as amended. . . The commissioner may
> enforce this part without the necessity of a
> wage assignment."

Part 2, section 39-3-209, MCA, gives the commissioner of labor authority to bring a wage claim action and, in fact, makes it his duty to institute actions for the collection of unpaid wages and for penalties where necessary to enforce the law without any requirement that there be an employee complaint or wage claim. Section 39-3-209, MCA, provides:

> "Commissioner of labor to investigate viola-
> tions and institute actions for unpaid wages.
> It shall be the duty of the commissioner of
> labor to inquire diligently for any violations
> of this part and to institute actions for the
> collection of unpaid wages and for the penal-
> ties provided for herein in such cases as he
> may deem proper and to enforce generally the
> provisions of this part."

Prior to its amendment by Section 1, Chapter 40, Laws of 1967, section 39-3-209, MCA, provided that it was the duty of the commissioner of labor ". . . to institute . . . actions for penalties provided for herein, in such cases as he may deem proper, and to enforce generally the provisions

-4-

of this act." The 1967 amendment extended this duty to include initiating actions "for the collection of unpaid wages and for the penalties provided for herein. . ." Thus, it is apparent that the legislature intended to give the commissioner of labor authority to bring actions for unpaid wages without imposing any additional requirement that there be an employee complaint or wage claim. Likewise, section 39-3-211, MCA, provides that the commissioner ". . . may maintain any proceeding appropriate to enforce the claim. . ."

Appellants contend that the Department has violated its own regulations by proceeding against appellants without an employee complaint, citing ARM §24-3.14BII(26)-S14250. While subsection (1) provides:

> "Starting a wage hour case--the complaint. The employee complaint and routine inspection are considered the basis of the enforcement structure of the law.. . ."

subsection (3) states:

> "Checking for non compliance. Inspections do not necessarily occur only when a complaint is filed against an employer. Routine investigations--on a spot check basis--are used to insure adequate compliance . . ."

Thus, it is apparent that the Department did not act in violation of its own regulations.

Appellants next argue that the statutory penalty provisions of section 39-3-206, MCA, were improperly applied. We note again that no complaint by the employee is necessary to enforce penalties under section 39-3-407, MCA, which authorizes the Department to pursue all remedies provided in Part 2, Chapter 3 of Title 39, MCA. This includes the provision for penalties, section 39-3-206, MCA, which provides:

-5-

"Penalty for failure to pay wages at times specified in law. Any employer, as such employer is defined in this part, who fails to pay any of his employees as provided in this part or violates any other provision of this part shall be guilty of a misdemeanor. A penalty shall also be assessed against and paid by such employer and become due such employee as follows: a sum equivalent to the fixed amount of 5% of the wages due and unpaid shall be assessed for each day, except Sundays and legal holidays, upon which such failure continues after the day upon which such wages were due, except that such failure shall not be deemed to continue more than 20 days after the date such wages were due."

Appellants' first argument is that penalties were improperly assessed for a period longer than the eighteen months allowed under section 39-3-207, MCA, which provides:

"Period within which employee may recover penalties. Any employee may recover all such penalties as are provided for the violation of 39-3-306 which have accrued to him at any time within 18 months succeeding such default or delay in the payment of such wages."

This argument is not persuasive. The statute providing for the eighteen-month period of limitations within which the penalty may be recovered, section 39-3-207, MCA, has been interpreted in Pope v. Keefer (1979), ___ Mont. ___, 591 P.2d 206, 36 St.Rep. 366, to mean that the penalty shall be assessed for the entire period of time that wages remain unpaid, except Sundays and legal holidays, so long as the complaint is filed within eighteen months following the accrual of the action. Pope involved a private civil suit by an employee against his employer for unpaid minimum wages and overtime, the statutory penalty, and attorney fees. After quoting section 39-3-207, MCA, we said:

"The statute is hardly a model of clarity, and its interpretation is subject to debate. Defendant argues that 'the 18 month figure must be computed from the filing of the complaint, July 22, 1976, and any claimed penalty for wages prior to that period of time are [sic] lost by virtue of said statute.' Plaintiff agrees that the date of the filing of the complaint should be used but contends that penalties are properly awarded because the date of filing is within

> the eighteen month period following the date of
> the accrual of the action, May 4, 1975. We be-
> lieve that plaintiff's interpretation is correct
> and look to language appearing in section 41-
> 1302, R.C.M. 1947, now section 39-3-206 MCA,
> which states that a penalty 'shall be assessed
> for each day, except Sundays and legal holidays,
> upon which such failure continues after the day
> upon which such wages were due . . ." 591 P.2d
> at 213, 36 St.Rep. at 374.

Appellants' second argument is that the penalty provi-
sions of section 39-3-206, MCA, do not apply because no
action was ever commenced by the filing of an employee
complaint to toll the eighteen-month period of limitations
under section 39-3-207, MCA.

Thus, the crucial question is whether or not an action
has been properly commenced "within 18 months succeeding
such default or delay in the payment of such wages." Section
39-3-207, MCA. We have held that section 39-3-205, MCA,
requiring the payment of unpaid wages within three days
after an employee is separated from employment, fixes the
employer's default and the accrual of the employee's cause
of action at a time three days after the employment is
terminated. Pope v. Keefer, supra, 591 P.2d at 212.
Therefore, as to each of appellants' former employees, the
cause of action arose three days after the employment was
terminated, and an action to recover the statutory penalties
must be properly commenced within eighteen months following
that date.

The question remains: Is the statute of limitations
tolled by the commencement of formal administrative proceedings,
or must an action be commenced by the Department's filing a
complaint with the District Court? In Pope, we interpreted
section 39-3-207, MCA, as requiring the filing of a complaint
within eighteen months to toll the statute of limitations in
a situation where an employee brought a private civil suit

-7-

for a violation of the minimum wage and hours act. This case presents a different situation: administrative enforcement of the law by the Department of Labor and Industry. Because of our conclusion that the filing of an employee complaint with the Department of Labor and Industry is not necessary for the Department to enforce the minimum wage and hours law, the action should be deemed to have been commenced February 9, 1978, when the Department informed appellants by letter that various employees were owed additional wages. In an administrative setting, where the agency acts to enforce the law on its own initiative, this action is the equivalent of the filing of a civil complaint. The Department's February 9, 1978 letter fulfilled the purposes of a complaint by giving appellants notice of the claim being made against them.

Therefore, the assessment of the statutory penalty is valid as to any employee of the appellants who was separated from his or her employment on or after August 6, 1976. We arrive at that date by taking February 9, 1978, as the date this action commenced and then by going back to claims which accrued eighteen months prior to that time; that is, on or before August 9, 1976. Since payment of wages is due three days after the employment is ended under section 39-3-205, MCA, and the action for penalties accrues at that time, employees whose employment terminated on or after August 6, 1976, are entitled to receive any penalties found to be due. Penalties on behalf of employees terminated from employment before August 6, 1976, are barred by the statute of limitations. Section 39-3-207, MCA. See Pope v. Keefer, supra.

The final issue to be considered is whether or not the method used by the Labor Standards Division to calculate the

amount of wages due to the employees under the minimum wage and overtime compensation act is lawful.

Montana's minimum wage law provides for both a minimum wage, section 39-3-404, MCA, and for overtime compensation at not less than one and one-half times the employee's hourly wage rate for hours worked in excess of forty in a week:

> "Overtime compensation. (1) No employer shall employ any of his employees for a workweek longer than 40 hours unless such employee receives compensation for his employment in excess of 40 hours in a workweek at a rate of not less than 1 1/2 times the hourly wage rate at which he is employed." Section 39-3-405(1), MCA.

The dispute here involves the validity of the Department's calculation of the employee's hourly wage rate for purposes of determining the overtime rate required under section 39-3-405(1), MCA, which must be at least one and one-half times the regular rate.

Our statutes authorize the commissioner of labor to make administrative regulations to carry out the purpose of the minimum wage and overtime compensation law. Section 39-3-403, MCA. Pursuant to this authority, the Department of Labor and Industry has adopted regulation §24-3.14BII(38)-S14340 in Title 24, Chapter 14, of the Administrative Rules of Montana, which provides:

> "24-3.14BII(38)-S14340. THE REGULAR RATE (1) The 'regular rate' of pay cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract. The U.S. Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed - an 'actual fact'. The 'regular rate' may be more than the minimum wage; it cannot be less. An employee's regular rate includes all payments made by the employer to or on behalf of that employee. 'Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result

of which is unaffected by any designation of a contrary "regular rate" in the wage contracts.'

"(2) The regular rate is an hourly rate. The 'regular rate' under the Law is a rate per hour. The Law does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek. The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid . . ." (Emphasis added.)

In the present case, the Labor Standards Division determined the regular rate of pay of the Yellow Cab Company employees by dividing the gross weekly earnings of the employee, based on the 43 percent commission, by the total number of hours actually worked by the employee in that workweek. This was a proper method of calculation of the regular hourly rate. The Department's regulations are taken almost verbatim from the federal regulations issued pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 et seq. Federal courts interpreting that act and the federal regulations have held that where, as here, the employment contract (calling for a 43 percent commission) does not satisfy the requirements of the minimum wage and overtime law, the regular hourly rate actually paid to the employee must be calculated to determine whether the employee was paid the overtime compensation required by the Fair Labor Standards Act.

Federal cases have upheld the calculation of an employee's regular hourly rate on the same basis used here: by dividing the employee's weekly gross pay by the total hours worked. Bay Ridge Co. v. Aaron (1948), 334 U.S. 446, 464, 68 S.Ct.

-10-

1186, 92 L.Ed. 1502; Walling v. Helmerich & Payne (1944), 323 U.S. 37, 65 S.Ct. 11, 89 L.Ed. 29; Masters v. Maryland Management Company (4th Cir. 1974), 493 F.2d 1329, 1333; Seneca Coal & Coke Co. v. Lofton (10th Cir. 1943), 136 F.2d 359; Warren-Bradshaw Drilling Co. v. Hall (5th Cir. 1941), 124 F.2d 42, aff'd 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Fair Labor Standards Act, 29 U.S.C. §207(a); 29 C.F.R. §778.108. In summary:

> "It seems well settled that where an employment contract is deemed not to satisfy the overtime provisions of the act, the 'regular rate' of pay at which an employee is employed is to be determined by dividing his total compensation each week by the total hours worked. (Citation omitted.)" Annot., 89 L.Ed. 35, 57-58 (1945).

Appellants contend that this method of determination of the regular rate makes compliance impossible, because under a commission arrangement, such as here, the employer will always be in default. That is the case, however, only where the employment contract fails to satisfy the requirements of the minimum wage and overtime compensation law. Therefore, an employer must at the inception agree with his employees, when they are compensated on a commission basis, to pay the stated commission or the minimum wage plus applicable overtime, whichever is greater, to comply with the statutory requirements. To rule otherwise would be to open a loophole in our statute that would be impossible to close, on the overtime rates required under the forty hour workweek section.

The employers in this case appear to have been in violation innocently. However, the public policy on which the minimum hours and wage law is based, as set out in section 39-3-401, MCA, requires no exception in case of innocent violations. Furthermore, public policy is served by following the federal formula so as to develop harmony in the field, as the Department has done making its calculations. Cf.

-11-

Glick v. State, Montana Dept. of Institutions (1973), 162 Mont. 82, 509 P.2d 1, 4, cert.den. 414 U.S. 856, 94 S.Ct. 158, 38 L.Ed.2d 106, appeal after remand (1974), 165 Mont. 307, 528 P.2d 686.

With regard to appellants' argument that the Department failed to take into account the tips received by employees of the Yellow Cab Company in calculating their wages, we decline to consider the matter because appellants are attempting to raise the issue for the first time on appeal, having failed to raise the issue in their petition for review before the District Court.

The case is remanded to the District Court to be modified by recalculating the penalties owing under the eighteen-month statute of limitations in section 39-3-207, MCA, in accordance with this opinion. As so modified, the summary judgment is affirmed.

_____
                     Justice

We Concur:

_____
Chief Justice

_____

_____
          Justices

Mr. Justice Gene B. Daly did not participate in the above cause.

-12-