Joseph R. STAUDOHAR, Plaintiff,

v.

The ANACONDA COMPANY and Anaconda Copper Company, Defendants.

No. CV 80–61–BU.

United States District Court,
D. Montana,
Butte Division.

Dec. 2, 1981.

D. L. Holland and R. Lewis Brown, Jr., Butte, Mont., for plaintiff.

Donald C. Robinson, Poore, Roth, Robischon & Robinson, Butte, Mont., for defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

RUSSELL E. SMITH, District Judge.

In a complaint containing two counts the plaintiff seeks damages from the defendants. In the first count plaintiff seeks damages because he was discharged by the defendants from his position as a carpenter-foreman. In the second count plaintiff seeks damages because of the defendants' refusal to hire him as a carpenter.

Plaintiff, prior to termination of his employment on December 14, 1979, had been an employee of the defendants and their predecessor corporation for a continuous period of approximately 35 years. From the commencement of his employment until May 1, 1977, plaintiff was employed as a carpenter and was a member of a bargaining unit represented by the United Brotherhood of Carpenters and Joiners Local 88. Plaintiff's rates of pay, hours of work, and other conditions of employment were, until May 1, 1977, the subject of successive collective bargaining agreements negotiated by the Carpenters Union with the defendants and their predecessor corporation.

On or about May 1, 1977, the plaintiff was assigned out of the bargaining unit and appointed to be a carpenter-foreman. This job was a salaried position entailing supervisory duties outside of the bargaining unit.

On or about December 14, 1979, the plaintiff was discharged from his employment for unauthorized possession of company property.

On or about July 1, 1974, a collective bargaining agreement was entered into between the defendant The Anaconda Company and the United Brotherhood of Carpenters and Joiners Local 88.

■ As to Count I of the complaint, it is the plaintiff's theory that after a lengthy period of employment an employee gains some kind of an entitlement to a job which cannot be terminated for something less than good cause. Under Montana law an employment for an indefinite period is ter-

minable at the will of either party except that an employee may not be discharged because of attachment or garnishment of his wages. MCA § 39–2–503 (1979).[1] The rule stated in the Montana statute has been specifically applied by the Supreme Court of Montana. *Reiter v. Yellowstone County*, Mont., 627 P.2d 845 (1981); *Keneally v. Orgain*, Mont., 606 P.2d 127 (1980). An exception to the rule was noted by some language in *Keneally* to the effect that the reason for discharge may not be violative of public policy. In the case here, however, where the discharge is for unauthorized possession of the employer's property, the element of public policy is simply not involved. Hence there can be no recovery on the first count.

As to Count II of the complaint, the collective bargaining agreement provides for a grievance procedure in five steps. Steps 3 and 4 [2] are pertinent here. After his discharge plaintiff applied for a job as a carpenter. On the same day a grievance was filed with the defendant reading as follows:

1. Protection against certain kinds of discrimination is provided by Mont.Const. art. II, § 4, and by MCA §§ 49–2–101—601 (1979).

2. Article 10, Section 3, of the collective bargaining agreement reads in pertinent part:

 Step. 3. (A) If a satisfactory settlement is not reached in Step 2 and it is desired to carry the grievance further, the matter will be presented in writing by the Chairman of the Grievance Committee, Business Agent or their representative to the Personnel Director or his representative within seven (7) working days of the Department Head's notification of his decision in Step 2. Within four (4) working days of receipt of such appeal, the grievance shall be considered at a meeting of the Grievance Committee of the Union with the Personnel Director and representatives of management. The Personnel Director shall notify the Chairman of the Grievance Committee, in writing, of his decision within seven (7) working days after the conclusion of the meeting.

 Step 3. (B) Any grievance that involves a suspension or a discharge or a question affecting employees in more than one department or a question of anyone outside of the bargaining unit performing any unit work, may be taken up beginning at Step 3.

Jan. 17, 1980
Carpenters Local 88 Anaconda Mt.
Jan. 18, 1980
Jan. 14, 1980

Personnel

Anthony Juntunen

On Jan. 14, 1980, Pete Staudohar applied for work as a Carpenter, he was turned down by the Anaconda Co. for he was not a member of the bargaining unit.

This is a violation of The Agreement, for in Article 15, Section 6. Temporary Salary Transfers: Pete Staudohar remained a member in good standing with Carpenters Union Local 88. Therefore he is a member of the bargaining unit, only to lose the time from his senority (*sic*) and department senority (*sic*) when he was on the monthly payroll, as stated in Article 15, Section 6.

/s/ Richard Vanesko
President Local 88
& Shop Steward

1/18/80
Refused to Accept
/s/ AEJ

It appears from the affidavit of Anthony E. Juntunen, Labor Relations Manager, that the initials "AEJ" are his and that he delivered the refusal in writing to the Union on the day it was presented. Thus, the defendants complied with Step 3, and it then became the duty of the Union under Step 4 to make a further effort to settle the

Step 4. (A) If no settlement is reached by means outlined in Step 3, the staff representative of the Union and/or his representative with the Grievance Committee, Plant Manager and/or his representatives for the Company shall within ten (10) working days make a further effort to settle the grievance. The Plant Manager and/or his representative shall provide the Union with a written decision within seven (7) working days following the Step 4 meeting.

Step 4. (B) In case of disagreement as to the facts existing on the property, Union representatives with representatives of the Management may make any necessary examination at the working places involved.

Step 4. (C) If Management's decision in any step of this procedure except Step (1) is not appealed by the Union to the next step within the time limit provided for such appeal, the particular grievance shall be deemed closed in accordance with the decision in that step. If Management's decision in any step of this procedure except Step (1) is not given within the time limits provided for such decision, the particular grievance shall be granted.

grievance. Defendants claim that no such further effort was made and that, under the provisions of Step 4, the particular grievance was deemed to be closed. Plaintiff, however, claims that the company refused to arbitrate and that it is now estopped to allege the arbitration provisions of the agreement as a defense to this action.[3] I find it unnecessary to decide whether the company's action constituted an abandonment of the arbitration agreement or whether it was simply a statement of a claim that the plaintiff was not a member of the bargaining unit and that his membership in the bargaining unit was a matter to be determined in arbitration by the arbitrator. The applicability of the bargaining agreement was to be decided by the arbitrator.[4]

■ If the defendants did in fact abandon the arbitration, then the plaintiff clearly had a right to enforce the provisions of the agreement and require an arbitration. Instead of doing that, the plaintiff brought this lawsuit and abandoned his remedies under the arbitration agreement. In so doing he placed on the court the duty of interpreting the collective bargaining agreement.[5]

In Article 15, Section 4, the collective bargaining agreement provides that after 31 days an employee may not be discharged except for "just cause." At the time of his discharge, plaintiff was a salaried employee, unprotected by the collective bargaining agreement, and he could be discharged without cause. That, however, does not in my opinion mean that the seniority given

him by Article 15, Section 6, could be terminated without cause.

Two questions then arise: (1) Was there a good cause for the firing; and (2) if so, did the employee still maintain his status as a carpenter with seniority.

As to the first question, I am of the opinion that under any legitimate interpretation of the collective bargaining agreement there was a cause for the firing. Plaintiff here admits (in a deposition) every element of a theft except the intent to steal. The possession of the gasoline was unauthorized. I cannot believe that, after an employee has been discovered in the possession of fungible property belonging to his employer, he can then, by statements of good intent made after the fact, require an employer to continue his employment. Under any reasonable interpretation of the words "for cause" what the plaintiff did here amounted to cause.[6]

As to the second question, it is my opinion that the seniority clause in Article 15, Section 6,[7] does not protect the plaintiff. The contract does not by specific language cover the situation presented by this case. If, however, the plaintiff had remained a carpenter paid on an hourly basis, he could have been fired and his seniority destroyed for cause. There is nothing in Article 15, Section 6, which indicates any intention to enlarge the employee's seniority when he moved up to a salaried job. The seniority continued to exist, although plaintiff was not under the jurisdiction of the Union, only because he continued to be employed by defendants. Plaintiff's job and his se-

3. See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967); Teamsters Local 745 v. Braswell Motor Freight Lines, Inc., 395 F.2d 655 (5th Cir. 1968).

4. Article 10, Section 5(e), of the collective bargaining agreement states: "In the event the Company takes the position that a certain matter is not arbitrable, the question of arbitrability shall be submitted to arbitration together with the dispute on the merits of the matter before the same arbitrator."

5. See Teamsters Local 745 v. Braswell Motor Freight Lines, Inc., 395 F.2d 655 (5th Cir. 1968).

6. I have in effect taken this case away from a jury. I do so because as I see it reasonable men could not disagree with a holding that a conversion of the employer's property is "just cause" for discharge.

7. Article 15, Section 6, of the collective bargaining agreement states: "Temporary Salary Transfers: Employees who transfer from the jurisdiction of the Union to the monthly payroll of the Company for a period exceeding ninety (90) days shall retain their plant seniority and departmental seniority, where applicable, which was accumulated up to the time they left the jurisdiction of the Union."

niority rights were all a part and parcel of his employment package. I think a court should not read into the agreement an artificial standard which would enlarge the seniority rights upon promotion to a salaried job beyond what they would have been had there been no promotion. Had plaintiff been fired as a foreman solely because he was unable to supervise the men under him, then, of course, he should retain his seniority rights because the discharge would relate to his capacity as a foreman and not to his capacity as a carpenter. In this case, the reason for the discharge would relate to the desirability of the employee in any capacity.

For the reasons stated, the defendants' motion for summary judgment is granted. The clerk will enter a judgment denying plaintiff all relief.