No. 14354

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

DONALD McNULTY and DIANA
McNULTY, husband and wife,

      Plaintiffs and Respondents,

-vs-

THE BEWLEY CORPORATION,
a Montana Corporation,

      Defendant and Appellant.

---

Appeal from:  District Court of the Nineteenth Judicial
           District,
           Honorable Robert M. Holter, Judge presiding.

Counsel of Record:

    For Appellant:

        Williams & Sverdrup, Libby, Montana

    For Respondents:

        Fennessey, Crocker & Harman, Libby, Montana

---

                Submitted on briefs: December 13, 1978

                        Decided:  **JUN 1 8 1979**

Filed:    **JUN 1 8 1979**

*Thomas J. Kearney*
                       Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant appeals from a judgment of the Lincoln County District Court awarding the plaintiffs $400 per month as reasonable compensation for 20 months work as managers of the Silver Spur Bar and Lounge.

The basic facts are not in dispute. Defendant, The Bewley Corporation, is a Montana corporation whose principle asset is the Silver Spur Bar and Lounge of Troy, Montana. During the period involved in this appeal (1971-1972), the Bewley Corporation was wholly owned by Tex and Bernice Bewley, husband and wife. Bernice Bewley served as president of the corporation and Tex Bewley was listed as its vice president.

The plaintiffs in this action are Donald McNulty and Diana (Bewley) McNulty, husband and wife. Diana McNulty is the daughter of Tex and Bernice Bewley.

The Bewley Corporation entered into a contract to purchase the Silver Spur Bar and Lounge in 1967. Thereafter, the corporation did not take an active part in operating the Silver Spur; instead, its officers, Tex and Bernice Bewley, hired a number of individuals to manage the bar and keep the liquor license active. The various managers were allowed to keep all revenues from the bar over and above certain fixed costs.

In April 1971, Tex and Bernice Bewley discharged the married couple who had been managing the Silver Spur. They then approached their daughter, Diana McNulty, and her husband, Donald McNulty, and asked them to take over the Silver Spur's management. When the Bewleys first approached the McNultys, Diana McNulty was employed by St. Regis Paper Co., earning a salary of $334 per month; Donald McNulty was employed with a plumbing contractor, earning approximately $7,000 to $8,000 per year.

After some initial reluctance, the McNultys agreed to manage the Silver Spur. Diana McNulty quit her job with St. Regis Paper so she could devote her full time to the operation of the bar. It was agreed that the McNultys would be compensated for their services by retaining all bar revenue in excess of operating and fixed costs. It was also agreed that the McNultys would manage the bar until the Bewleys obtained new managers, or until the place could be sold.

After managing the bar for approximately six months, the McNultys became totally dissatisfied with their duties and compensation; they informed the Bewleys that they wanted to be replaced immediately. The Bewleys, however, were unable to find any replacements, so they offered to give the McNultys 49% ownership in the business if the McNultys would agree to manage the Silver Spur for an additional two years. The McNultys rejected this offer, but nonetheless, they remained as managers until the end of November 1972, an additional fourteen months. The McNultys testified that they stayed because the Bewleys indicated that things would be made "right" with the McNultys if they remained until replacements could be found.

In November 1972, the Bewleys hired a man named Neil Lamorie as replacement manager. The Bewleys never offered to make things "right" with the McNultys, which prompted the present action.

On January 22, 1976, Donald and Diana McNulty filed a complaint in the District Court, Lincoln County seeking to recover $8,000 for wages due plaintiffs for work and services performed as managers of the Silver Spur Bar and Lounge. On April 1, 1977, defendant filed its answer denying any liability to Diana or Donald McNulty. The matter was tried before the District Court, sitting without a jury, on November 2, 1977.

On December 14, 1977, the District Court entered findings of fact, conclusions of law and judgment in favor of the

McNultys.  The judgment ordered the corporation/pay $7,052.50
                                                to
to the McNultys as back wages, attorney fees and costs of

suit.  The corporation's motion for a new trial was thereafter

denied and this appeal followed.

The parties stipulated to submit the case to this Court

without oral argument.

The defendant's contentions are:  (1)  that the court

erred when it admitted testimony relating to certain representa-

tions made by Tex Bewley;  (2)  that the court erred when it

awarded the plaintiffs "reasonable compensation" for the

services they performed at the Silver Spur; and (3) that the

court erred when it awarded attorney fees pursuant to section

39-3-214 MCA (formerly section 41-1306, R.C.M. 1947).

Defendant, first contends that the court violated the

dead man's statute (formerly section 93-701-3(4), R.C.M. 1947)

by allowing Diana and Donald McNulty to testify to a conversation

they had with Tex Bewley before his death.  Defendant also

contends the evidence was hearsay.

We note that Montana has abolished its archaic dead

man's statute by adopting the new Montana Rules of Evidence.

Rule 601, Mont.R.Evid. provides:  "(a) General rule competency.

Every person is competent to be a witness except as otherwise

provided in these rules."

The new Montana Rules of Evidence remove the limitations

which formerly attached to testimony about transactions or

oral communications with persons who die before trial.

Under the new Rules, such testimony is admissible, subject,

of course, to cross-examination to establish the weight to

be afforded to the testimony.  Accordingly, under Rule 601,

Mont.R.Evid., the McNultys were competent to testify about

the representations made by Tex Bewley.

-4-

The testimony concerning Tex Bewley's representations is not barred as hearsay. Rule 801, Mont.R.Evid. provides:

> ". . . A statement is not hearsay if: . . . The statement is offered against a party and is . . . a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of that relationship. . . ." (Emphasis added.)

Here, Tex Bewley, as the vice-president of Bewley Corporation, was an agent of that corporation. There is no question that he made the statements while he was acting within the scope of his agency relationship. Therefore, the testimony cannot be classified as hearsay.

Defendant next asserts insufficiency of the evidence to support the court's conclusion that a contract for reasonable wages was implied by law because of plaintiffs' performance of such services. Here we must agree in part. The District Court's conclusion is not fully supported by the record and accordingly, the judgment as to the amount of wages must be modified.

In Keith v. Kottas (1946), 119 Mont. 98, 101, 172 P.2d 306, this Court stated:

> "There cannot be an express and implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law imposes and raises a promise. No agreement can be implied where there is an express one existing." (Emphasis added.)

Under Keith, if an express contract has been entered into by the parties, the District Court cannot alter the terms of that express agreement. In the present case, the uncontroverted testimony shows that there was an express agreement in existence between the Bewleys and McNultys during the first six months of the management relationship. Diana McNulty, Donald McNulty and Bernice Bewley all testified that the parties understood that the McNultys would retain whatever money remained from the bar revenues after operating and fixed costs had been paid.

This understanding was tantamount to an express agreement fixing the compensation to be paid the McNultys during the first six months of the arrangement. Therefore, the District Court could not impose an implied contract for the first six months of the arrangement. The judgment in favor of the plaintiffs must therefore be reduced by $2,400 (6 x $400 per month).

There is sufficient evidence, however, supporting the McNultys' right to compensation for their final fourteen months as managers of the Silver Spur.

A change in the parties relationship took place on or about October 1, 1971 (6 months into the arrangement). At that time the McNultys became dissatisfied with the arrangement and asked the Bewleys to find immediate replacements. The Bewleys, unable to find a replacement, enticed the plaintiffs to remain as managers for an additional fourteen months. The McNultys stayed because the Bewleys made representations that things would be made "right". Here the contract was implied as evidenced by the conduct of the parties. Cartwright v. Joyce (1970), 155 Mont. 478, 473 P.2d 515.

The representations made by the Bewleys were sufficient to revoke the original express contract and give rise to an implied contract for reasonable compensation. This implied contract was in existence for the final fourteen months of the McNultys' term as managers. Accordingly, that portion of the judgment awarding the McNultys $5,600 (14 x $400 per month) must be affirmed.

Defendant's final claim of error is that the court erred in awarding $700 in attorney fees to the McNultys because they cannot be classified as "employees" as defined by section 39-3-201(3) MCA (formerly section 41-1301(3)(c), R.C.M. 1947). We find the attorney fees were properly awarded.

Section 39-3-214 MCA (formerly section 41-1306, R.C.M 1947), provides:

-6-

"Whenever it shall become necessary for the
_employee_ to enter or maintain a suit at law for
the recovery or collection of wages due as
provided for by this part, then such judgment
shall include a reasonable attorney's fee in
favor of the successful party, . . ."     (Emphasis
added.)

It is clear that the plaintiffs initial status as
managers of the Silver Spur was changed to that of employees
in early October 1972.  From that point on, the McNultys
were employees of defendant corporation, i.e., they were
persons who worked for another for hire.  Clearly, therefore,
they were entitled to reasonable attorney fees after they
successfully prosecuted their wage claim against defendant.

For the foregoing reasons, the judgment of the District
Court is reduced by $2,400.  Otherwise, the judgment is
affirmed.

Costs on appeal are awarded to plaintiffs.

_____
                    Justice

We Concur:

_____
        Chief Justice

_____

_____
        Justices

-7-