No. 87-175

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

———————————————

THOMAS MALLOY and HARRIET A. MALLOY,

        Plaintiffs and Appellants,

  -vs-

JUDGE'S FOSTER HOME PROGRAM, INC.,
and GILMARY VAUGHAN, Director,
et al.

        Defendants and Respondents.

———————————————

APPEAL FROM:  District Court of the Third Judicial District,
               In and for the County of Deer Lodge,
               The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Erdmann & Wright; F. Woodside Wright, Helena, Montana

    For Respondent:

        Knight, Dahood, McLean & Everett; Bernard J. Everett,
        Anaconda, Montana

———————————————

Submitted on Briefs: Oct. 1, 1987

Decided: December 3, 1987

Filed: 1987

_____
              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Thomas Malloy and Harriet Malloy appeal from an order of the District Court, Third Judicial District, Deer Lodge County, granting the defendants' motion to dismiss on the grounds that plaintiffs have failed to state a cause of action for which relief could be granted. We affirm.

The plaintiffs present four issues on appeal. They are: (1) Whether the District Court erred in dismissing all claims of plaintiff Thomas Malloy; (2) Whether the District Court erred in dismissing count I of plaintiff Harriet Malloy's complaint for breach of contract; (3) Whether the District Court erred in dismissing count II of plaintiff Harriet Malloy's complaint which claimed that her termination was in violation of public policy; and, (4) Whether the District Court erred in dismissing count III of Harriet Malloy's complaint for breach of the implied covenant of good faith and fair dealing.

"Discovery House" is a home for underprivileged and disturbed youths in the Anaconda area. Discovery House is under the auspices of the Judge's Foster Home Program, Inc., a non-profit corporation organized exclusively for charitable, religious, educational and scientific purposes. The program is licensed by the State of Montana Department of Social and Rehabilitative Services (SRS) and subject to its licensing requirements. The Home is operated by "house parents" whose duties include overseeing the day-to-day affairs of the home as well as providing a home-like atmosphere for the special residents of Discovery House.

Tom and Harriet Malloy were first employed as house parents in 1982. From 1982 until 1985, plaintiffs were

employed on the basis of yearly contracts. In December, 1985, Harriet entered into a 13 month contract for her services. The contract made no mention of Tom nor was he a signatory to the contract. Although the contract was for a specified period it provided that either party could terminate the contract with 30 days notice.

On April 10, 1986, Tom Malloy orally abused one of the Discovery House residents in the presence of Jeananne Murphy, a social worker and volunteer member of the Discovery House Board of Directors. Although present during the incident, Harriet Malloy made no attempt to intervene. Subsequent to witnessing the child's oral degradation at the hands of Tom Malloy, Murphy promptly filed a complaint with the Director of Discovery House, Sister Gilmary Vaughan and referred the incident to the regional supervisor of the SRS.

On April 17, 1986, Sister Vaughan notified Harriet Malloy that she was suspended with pay pending the outcome of the investigation by SRS. On April 30, 1986, SRS issued its report which concluded that Tom used vulgar language and admitted to doing so. The report further found Tom Malloy's conduct on April 10 to be in violation of the State of Montana licensing requirements. The report also found that Harriet had acted negligently in not intervening during the April 10 incident.

Discovery House sent Harriet a letter on May 15, 1986, which stated:

> If you wish to continue your employment with the Judge's Foster Home Program, Inc., under the conditions outlined in this correspondence, then please sign the original letter and return it to Sister Gilmary Vaughan before you return to work. You will be expected to return to work on May 23, 1986.
>
> If you choose not to agree to return under the stated conditions, then please notify the board of

directors by May 23, 1986 in writing of your decision to resign, or your reasons why you cannot sign this agreement. (Emphasis added.)

Harriet Malloy did not agree to the conditions delineated in the May 15, 1986 letter nor did she return to work on May 23, 1986 as she was directed. Subsequent to the SRS investigation and report being completed, Harriet requested a hearing on the complaint lodged against Thomas Malloy. Discovery House refused her request for a hearing.

On August 18, 1986, Discovery House terminated Harriet Malloy for her failure and refusal to return to work almost three months after the date she was directed to do so.

The plaintiffs filed a three count extensive and detailed complaint against Discovery House and its Board of Directors, in their individual and representative capacities. The District Court granted the defendant's motion to dismiss the Malloys' complaint. The plaintiffs appeal from the judgment of the District Court.

The plaintiffs submit that the District Court erred in dismissing the claims of Thomas Malloy against the defendant. We disagree.

In Hasbrouck v. Krsul (1975), 168 Mont. 270, 272, 541 P.2d 1197, 1198, this Court, in discussing the standard of review to be applied in cases dealing with a motion to dismiss, stated:

> . . . a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Citing Conley v. Gibson (1957), 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84. See also Gebhart v. D. A. Davidson Co. (Mont. 1983), 661 P.2d 855, 40 St.Rep. 521; Busch v. Kammerer (1982), 200 Mont. 130, 649 P.2d 1339.

Thomas Malloy can prove no set of facts in support of his claim which would entitle him to relief. Thomas Malloy claims that an employment relationship existed between Discovery House and himself. He asserts that he was the "designee" mentioned in clause VII of the contract which Harriet signed in December, 1985. Clause VII provides:

> The party of the second part agree [sic] that she or her designee, shall remain in the house when there are youth present. At no time is a youth to be left in the facility alone.

Thomas Malloy is not mentioned in clause VII, in fact there is no mention of Thomas Malloy in the entire contract. Although Malloy had been a party to the contract in previous years, the record shows that he was not a signatory to the contract and in fact Sister Vaughan negotiated with Harriet Malloy and constructed her employment contract with the specific purpose of excluding him.

There is nothing in paragraph VII of this contract that could be construed to effect an employment relationship between Discovery House and the designee. The contract and the "Guide for House Parents" which was given to Harriet Malloy make it clear that it is the house parent's, not Discovery House's, responsibility to secure a replacement or designee and the houseparent seeking a replacement is further responsible for compensating the designee.

The contract is straight-forward and clear. There is no ambiguity in regard to Thomas Malloy's relationship with Discovery House under the terms of the contract; the relationship was nonexistent. In Danielson v. Danielson (1977), 172 Mont. 55, 58, 560 P.2d 893, 894, this Court stated:

> It is clear from Montana cases that where the language of a written contract is clear and unambiguous there is nothing for the court to

construe; the duty of the court is simply to apply the language as written to the facts of the case, and decide the case accordingly.

We conclude that no contractual employment relationship existed between Thomas Malloy and Discovery House and thus affirm the District Court's action in dismissing all claims of Thomas Malloy.

Appellant asserts that the District Court erred in dismissing Harriet Malloy's complaint against the defendants for breach of contract. We disagree.

Harriet Malloy premises her breach of contract theory on Clause VIII of her December 31, 1985 employment contract which provides:

> This agreement is subject to termination by either party hereto, upon giving thirty (30) days written notice to the other party of the intent to terminate.

Harriet Malloy insists that Discovery House did not give her 30 days advance notice before terminating her employment and so was in breach of contract. Mrs. Malloy contends that the allegation places the 30 day notice requirement in issue thus precluding dismissal of the complaint by the District Court.

It is a well-settled rule of contract law that a party who commits the initial breach cannot complain of a subsequent breach by the other party. Bradford v. New York Times Corp. (2d Cir. 1974), 501 F.2d 51; Watson v. Auburn Iron Works, Inc. (Ill. 1974), 318 N.E.2d 508; Aerostatic Engineering Corp. v. Szczawinski (Mass. 1973), 294 N.E.2d 521.

In Rogers v. Relyea (1979), 184 Mont. 1, 8, 601 P.2d 37, 41, this Court held:

> The general rule is that a party committing a substantial breach of a contract cannot maintain an

action against the other contracting party or his predecessor in interest for a subsequent failure to perform if the promises are dependent. 17 Am.Jur.2d Contracts, § 366 p. 807. A substantial or material breach is one which touches the fundamental purposes of the contract and defeats the object of the parties in making the contract.

In the immediate case, Harriet Malloy and Discovery House entered into an employment contract. The fundamental purpose of the contract was that Harriet Malloy would provide house parent services for Discovery House for which the Judge's Foster Home Program would pay her. Harriet Malloy committed a substantial and material breach of her employment contract by failing to report for work for some 88 days after being directed to do so. As Harriet Malloy committed the initial material breach, she cannot maintain an action against Discovery House for breach of contract.

Further, we concur with the opinion of the District Court that the defendants complied with the provision requiring 30 day notice by sending Harriet Malloy the May 15, 1986 letter informing her that if she wished to continue her employment with the Judge's Foster Home, she should return to work by May 23, 1986. Harriet Malloy did not return to work on May 23, 1986, in fact at the time of her termination, 88 days had passed since she was invited to return. Harriet Malloy has failed to state a cause of action against defendants for breach of contract for which relief could be granted.

Plaintiff Harriet Malloy next contends that the District Court erred in dismissing count II of her complaint alleging that her termination was in violation of public policy. Harriet Malloy submits that her termination was in violation of her federal and state constitutional right to due process of law. We find the contrary to be true.

- 7 -

Harriet Malloy proffers the argument that her employment contract is a property right and therefore rights of due process attach. In Board of Regents v. Roth (1972), 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561, the United States Supreme Court delineated the elements necessary for an employee to have a protected property interest in their employment. The Court held:

> [to] have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

The court further held that:

> The source of an entitlement establishing a property interest may be found in state law or in rules and understandings existing between the individual and his employer.

Roth, 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 561.

In Reiter v. Yellowstone County (Mont. 1981), 627 P.2d 845, 848, 38 St.Rep. 686, 688, this Court held:

> The employee must be able to point to an independent source such as state law or rules or understandings between the employer and his employees.

Harriet Malloy maintains that the December 31, 1985 employment contract constitutes the independent source as contemplated in Reiter, supra. This contention is without merit. Mrs. Malloy has failed to specify any state law or rules or understanding with her employer that could be construed as an independent source entitling her to due process prior to termination.

As Harriet Malloy cannot establish that she had a property interest in her employment at Discovery House, we need not address the issue of whether Discovery House's

actions in denying her request for a hearing violated her due process rights.

> The first question to be answered is whether appellant had a property or liberty interest which is accorded due process protection by the Fourteenth Amendment to the United States Constitution and Article II, Section 17, of the Montana Constitution. (Citations omitted.) Only if such an interest is established, may the question of whether due process protections have been violated be considered.

Akhtar v. Van De Wetering (1982), 197 Mont. 205, 210, 642 P.2d 149, 152.

Lastly, Mrs. Malloy contends that the District Court erred in dismissing her complaint against the defendants for breach of the implied covenant of good faith and fair dealing. We disagree.

It is well settled that the implied covenant of good faith and fair dealing exists in all employment situations and that "[t]he duty arises out of the employment relationship yet the duty exists apart from, and in addition to, any terms agreed to by the parties." Gates v. Life of Montana Insurance Co. (Mont. 1983), 668 P.2d 213, 214, 40 St.Rep. 1287, 1288; See also Crenshaw v. Bozeman Deaconess Hospital (Mont. 1984), 693 P.2d 487, 41 St.Rep. 2251.

The record is replete with examples of the defendants efforts to fairly resolve the situation so that Mrs. Malloy could continue in the employ of the Judge's Foster Home Program, Inc. Mrs. Malloy refused to avail herself of any of the opportunities that were presented to her.

The defendants had a legitimate business reason for terminating Harriet Malloy's employment. At the time of her discharge Mrs. Malloy had refused to return to work 88 days after being directed to do so. As previously stated her conduct constituted a material breach of her employment

contract and the defendants appropriately exercised the remedy of discharge as their reasons for doing so were fair and honest. Flanigan v. Prudential Federal Savings and Loan Assn. (Mont. 1986), 720 P.2d 257, 43 St.Rep. 941.

We affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 10 -