No. 88-117

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

TAMMY PROUT,

        Plaintiff and Appellant,

   -vs-

SEARS, ROEBUCK and COMPANY,
and TERRY McGINNIS,

        Defendants and Respondents.

APPEAL FROM:  District Court of the First Judicial District,
              In and for the County of Lewis and Clark,
              The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Randy K. Dix argued, Helena, Montana

    For Respondent:

        John Sullivan argued; Hughes, Kellner, Sullivan & Alke,
        Helena, Montana

Submitted:   November 28, 1988

Decided:   February 16, 1989

Filed:

Clerk

Honorable Frank I. Haswell, Retired Chief Justice, delivered the Opinion of the Court.

In this action for wrongful termination of employment, the underlying issue is whether there is a genuine issue of material fact precluding summary judgment. The District Court held there was none. We disagree.

Plaintiff Tammy Prout, an employee of the Sears catalogue store in Helena, Montana, was fired by Terry McGinnis, the store manager, on December 2, 1986. The reason for termination given by Sears to Tammy was falsification of her time sheets showing the hours she worked on two occasions. She sued Sears and McGinnis for wrongful termination of her employment, alleging breach of the implied covenant of good faith and fair dealing, negligent firing, estoppel and negligent infliction of emotional distress. The defendants answered claiming that Tammy was an employee at-will subject to termination for any reason deemed sufficient by Sears, without any reasonable expectation of job security; accordingly, the implied covenant of good faith and fair dealing did not exist in the employment relationship between Sears and Tammy and cannot be used as a basis for her claim of wrongful discharge.

Following pretrial discovery and entry of a pretrial order pursuant to Rule 16, M.R.Civ.P., the District Court of Lewis and Clark County granted the defendants' motion for summary judgment holding there was no genuine issue of material fact presented and that defendants were entitled to judgment as a matter of law.

The undisputed facts disclose that plaintiff went to work at the Sears catalogue store in Helena on a part-time basis when she was a sixteen-year-old high school student. At that time she signed an employment application reading in pertinent part:

> "In consideration of my employment, I agree to conform to the rules and regulations of Sears, Roebuck & Co. and my employment and compensation can be terminated with or without notice, at any time, at the option of either the company or myself. I understand that no unit manager or representative of Sears, Roebuck & Co. other than the president or vice president of the company, has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.
>
> May 30, 1979. /s/ Tammy Sharpe [Prout]"

When plaintiff was hired four days later she signed a personal record card containing the following language:

> "In consideration of my employment, I agree to conform to the rules of Sears, Roebuck & Co. and my employment and compensation can be terminated, with or without cause and with or without notice, at any time, at the option of either the company or myself.
>
> June 4, 1979. /s/ Tammy Sharpe [Prout]"

The agreed facts in the pretrial order further indicate that Tammy was initially hired as a sales person but a little over two years later, on August 10, 1981, she was promoted to the position of machine operator and given a twenty cent per hour increase in pay due to the higher technical skills required of the machine operator's position. On January 2, 1983, Tammy was promoted to the position of Division Head A (supervisor) and received a pay increase of $1.50 per hour. The agreed facts further state that "Tammy Prout was given these promotions because her supervisors were generally satisfied with her job performance." On December 2, 1986, Terry McGinnis advised Tammy that her employment with Sears was terminated effective that date.

3

During Tammy's employment at the Helena Sears store Sears changed managers five times. At least three of these managers gave performance evaluations on Tammy reporting that she had difficulties with absenteeism and tardiness which needed attention and correction. These reports and other warnings given to Tammy were both written and verbal. The reason given by Sears to Tammy for her termination was falsification of two time sheets although McGinnis, the manager, also claimed he asserted absenteeism and tardiness.

At the heart of this dispute is Sears's time-keeping and payment system. Sears paid its employees in the Helena store every Friday for the preceding week on the basis of time sheets due at the central payroll office each Thursday for the entire work week. Thus, if an employee was scheduled to work on Friday and Saturday, the employee would enter the scheduled hours for those days on the Thursday time sheet and be paid accordingly on Friday of the following week. If, in fact, the recorded Friday and Saturday hours were not worked as scheduled, the employee was supposed to teletype the correction of hours to the central payroll office the following Monday.

The weekly time sheets signed by Tammy contained this language:

> "I have recorded my actual starting and quitting time each day. Any falsification will subject me to immediate dismissal."

This was signed by Tammy each week as she sent in her weekly time sheet.

Tammy believed that it was an acceptable practice to make up the necessary hours during the next work week rather than to teletype the corrections into the central payroll office on the Monday following a missed day. Tammy and two

4

former employees of the Helena Sears store testified by deposition this was an accepted store practice under two prior store managers. The existence of this practice was disputed by defendant McGinnis and several current employees.

During two pay periods in November, 1986, Tammy missed time at work which she had recorded on her time sheets as having worked. She did not teletype in the Monday corrections adjusting her pay. Tammy was paid for these hours which were missed. She was attempting to make up the hours missed on a compensatory time basis. Both of the two incorrect time sheets were observed by manager McGinnis, and he promptly fired Tammy for this reason when she returned to work after receiving the pay check under the second inaccurate time sheet.

The pretrial order lists the following issues of fact, among others, that remain to be litigated upon the trial:

1. Whether defendants acted unfairly and in bad faith towards plaintiff;

2. Whether defendants acted in a negligent manner;

3. Whether defendants negligently inflicted emotional distress upon plaintiff;

4. Whether defendants are equitably estopped from relying upon the language in the employment application and personal record card regarding termination without cause or notice;

5. Whether defendants led plaintiff to believe that her time-keeping procedures were acceptable to them, and, if so, whether defendants are equitably estopped from terminating plaintiff for allegedly falsifying her time sheets;

6. Whether plaintiff acted negligently concerning her termination.

One of the issues of law listed in the pretrial order is whether the provisions of plaintiff's employment

5

application and personal record card bar the claims asserted in this lawsuit. The pretrial order notes that this legal issue is the subject of a pending motion for summary judgment by defendants.

The gist of the District Court's ruling on the motion for summary judgment is contained in the following language:

> "The sole issue decided by the Court is that plaintiff's claims are precluded as a matter of law by the language of plaintiff's employment application and her personal record card. That language in clear and unequivocal terms notified plaintiff that her employment could be terminated at any time and for any reason, and defeats the claims plaintiff is attempting to assert in this case."

At the outset, we note that this case is governed by the law that existed at the time of firing, December 1986, and is no way affected by legislation enacted by the 1987 legislature.

Montana's at-will employment statute provides in pertinent part:

> "TERMINATION AT WILL. An employment having no specified term may be terminated at the will of either party on notice to the other, except where otherwise provided by [statute]." Section 39-2-503, MCA.

Notice prior to termination is not required. Gates v. Life of Montana Insurance Company (1982), 196 Mont. 178, 638 P.2d 1063 (Gates I). None of the statutory exceptions are applicable to this appeal.

Because of the harshness of this statute when applied literally and mechanically to all at-will employment terminations (Nye v. Dept. of Livestock (1982), 196 Mont. 222, 639 P.2d 498), and because of abuses inherent in employment relationships between parties of unequal bargaining power

(Dare v. Montana Petroleum Marketing Co. (1984), 212 Mont. 274, 687 P.2d 1015; Stark v. The Circle K Corporation (Mont. 1988), 751 P.2d 162, 45 St.Rep. 377), courts in Montana and elsewhere, to achieve justice in a wide variety of employment situations, have established exceptions to the unlimited discretion of the at-will employer to discharge his employees. We need not concern ourselves here with a survey and exposition of the law in this area nationally or in other jurisdictions, as Montana has proven to be a fertile field for such litigation and has developed its own law and precedent accordingly.

Aside from statutory enactments, Montana courts have recognized four exceptions to the right of the at-will employer to discharge its employees:

1. When the discharge violates public policy: Keneally v. Orgain (1980), 186 Mont. 1, 606 P.2d 127; Staudohar v. Anaconda Co. (D. Mont. 1981), 527 F.Supp. 876; Nye v. Dept. of Livestock, supra.

2. When the discharge breaches an express or implied promise of job security: Gates I, supra; Dare v. Montana Petroleum Marketing Co., supra; Stark v. The Circle K Corporation, supra.

3. When the discharge breaches the implied covenant of good faith and fair dealing: Gates I, supra; Gates v. Life of Montana Insurance Co. (1983), 205 Mont. 304, 668 P.2d 213 (Gates II); Dare, supra; Crenshaw v. Bozeman Deaconess Hospital (1984), 213 Mont. 488, 693 P.2d 487; Malloy v. Judges Foster Home Program (Mont. 1987), 746 P.2d 1073, 44 St.Rep. 1996; Stark, supra.

4. Negligent discharge: Crenshaw, supra.

These four exceptions frequently overlap. For a good exposition of the Montana law in this area, see Hopkins and Robinson, Employment At-Will, Wrongful Discharge, and the

*Covenant of Good Faith and Fair Dealing in Montana, Past, Present, and Future*, 46 Mont. L. Rev. 1 (1985).

In this case we have an express, written, at-will employment relationship between Sears and Tammy, giving Sears the right to terminate her employment, without notice, without cause and providing that any falsification of time sheets would subject Tammy to immediate dismissal. We have a pretrial order approved both as to form and content by the attorneys for the respective parties, signed and entered by the district judge, and listing what the parties considered eight issues of fact remaining to be litigated at the trial. Fact issues listed include whether the defendants acted unfairly and in bad faith toward the plaintiff; whether defendants acted negligently concerning plaintiff's termination; whether defendants led plaintiff to believe that her time-keeping procedures were acceptable to them, and, if so, whether defendants are equitably estopped from terminating plaintiff for allegedly falsifying her time sheets; and whether defendants are equitably estopped from relying upon the language in the employment application and personal record card regarding termination without cause or notice. At first blush it would appear that at least some of these fact issues are really issues of law and that some of them are mixed questions of fact and law. However, the parties treated them as issues of fact and, underlying all these listed issues, are numerous factual disputes concerning Tammy's job performance, the reason for and manner in which she was discharged, the employer's practice concerning time-keeping procedures, and related matters.

The District Court held as a matter of law that the language of Tammy's employment application and personal record card barred her claims in this action, thus rendering the fact issues listed in the pretrial order irrelevant.

In deciding this appeal we need not further detail the evidence developed in pretrial discovery. The parties concede the existence of numerous fact issues for litigation at trial by approving the content of the pretrial order. These must be resolved to determine whether plaintiff's claims fall into any of the four exceptions to the right of the at-will employer to discharge its employees. This precludes summary judgment.

Our decision in this appeal turns on the facts peculiar to this case. It is not to be read as a carte blanche to the jury in every wrongful discharge case. The distinguishing characteristics in this case are the agreement by the attorneys that the listed fact issues in the pretrial order "remain to be litigated upon the trial"; the alleged conduct of the employer in discharging its employee for dishonesty consisting of a time-keeping practice that allegedly had been condoned on prior occasions and which allegedly made it difficult, if not impossible, for the discharged employee to secure further employment; and the alleged negligence of the employer. In this case we neither expand the exceptions to the at-will rule nor create jury issues out of thin air, but simply apply Montana precedent to this case.

At the same time we give effect to the employment application and record card. These give the employer the right to fire without cause. They do not give the employer the right to fire for a false cause. If the at-will employer who can fire without cause under the employment contract chooses instead to fire an employee for dishonesty, the discharged employee must be given the opportunity to prove the charge of dishonesty false.

The foregoing limitation on an employer's right to fire without cause was recently stated by Justice Harrison:

"Employers can still terminate untenured employees at will and without notice. They simply may not do so in bad faith or unfairly without becoming liable for damages." Crenshaw v. Bozeman Deaconess Hospital, 693 P.2d at 492.

We vacate the summary judgment, dismiss the claim for negligent infliction of emotional distress as having insufficient basis, and remand the balance of the case to the District Court for further proceedings.

_Frank I. Haswell_
Hon. Frank I. Haswell, sitting in place of Justice William E. Hunt, Sr.

We concur:

Chief Justice
_John Conway Harrison_

_John C. Sheehy_
_L. C. McDonough_
Justices

Mr. Justice Fred J. Weber dissents as follows:

I

The majority has not addressed the key legal issue presented in this case. Where the Sears-Prout written contract is clear and unambiguous, can the covenant of good faith and fair dealing be implied in such a manner as to negate the express contractual terms and allow recovery of tort damages?

The District Court concluded that the plaintiff's claims were precluded as a matter of law because of the clear and unambiguous language of the employment application and personal record card. On appeal, the majority reverses the District Court, concluding that there are issues of fact which preclude the granting of summary judgment. To reach that conclusion, it is necessary to ignore the terms of the written contract because those terms would preclude a factual inquiry into Sears' termination of Tammy Prout. The majority opinion implies that the terms of Sears' employment contract can be disregarded by a court of law. The majority has also implied that the employment at-will statute has no significance here. I do not agree with such a result. For that reason, I believe that it is necessary to critically examine the Montana cases and to compare our analysis of the law with that of other jurisdictions.

II

In the 1500's, the English common law presumed that an employment contract with an annual salary computation was for a one year term. In the early 19th century, American courts borrowed the English rule, concluding that the rule was consistent with the predominant master-servant employment relationships of that time.

11

Then, in apparent response to economic changes sweeping the country, American courts abandoned the English rule and adopted the employment-at-will doctrine. This became the common law doctrine generally followed in the United States. Under that doctrine an employer was free to fire an employee hired for an indefinite term for good cause, no cause, or even for cause morally wrong, without being guilty of legal wrong. See generally, Wagonseller v. Scottsdale Memorial Hospital (Ariz. 1985), 710 P.2d 1025.

In 1895 Montana enacted its termination at-will statute providing:

> An employment having no specified term may be terminated at the will of either party on notice to the other . . . [with exceptions not here applicable]

That section was adopted from the Field Civil Code, and has remained essentially unchanged until the 1987 enactment of the Wrongful Discharge from Employment Act, codified as §§ 39-2-901 to 914, MCA. The facts here preceded the enactment of that Act, which therefore does not apply in this case.

As pointed out in Wagonseller, the trend in the United States has been to create exceptions to the at-will employment doctrine with the result that the employer's unlimited discretion to discharge at will has been limited. As pointed out in the majority opinion, most jurisdictions including Montana recognize an exception based on the employer's violation of public policy. Several jurisdictions have recognized an exception based on an implied-in-fact promise of employment for a specified term. Other jurisdictions have recognized an exception where there is an implied-in-law contract term known as the implied covenant of good faith and fair dealing.

12

California has been one of the leading jurisdictions recognizing both an implied-in-fact contract to discharge only for good cause (See, Pugh v. See's Candies, Inc. (1981), 116 Cal.App.3d 311, 171 Cal.Rptr. 917), and the implied covenant of good faith and fair dealing in employment contracts (See, Cleary v. American Airlines, Inc. (1980), 111 Cal.App.3d 443, 168 Cal.Rptr. 722). The court in Cleary held that an employer's breach of the covenant would support an employee's action in either tort or contract. That theory was adopted in a number of other appellate court decisions of the state of California. California reversed that position by its Supreme Court decision dated December 19, 1988, Foley v. Interactive Data Corp., (Cal. 1988), 765 P.2d 373.

In Foley the majority made a detailed review of cases in California and elsewhere. In a similar way the dissents carefully reviewed the contrary positions in detail. Foley is an excellent case through which to study the development of law in this entire area. The California Supreme Court concluded that an action based upon the implied covenant of good faith and fair dealing was an action upon contract and that tort damages were not recoverable. The Court considered the application of bad faith insurance cases to the employment context and stated:

> In our view, the underlying problem in the line of cases relied on by plaintiff lies in the decisions' uncritical incorporation of the insurance model into the employment context, without careful consideration of the fundamental policies underlying the development of tort and contract law in general or of significant differences between the insurer/insured and employer/employee relationships. When a court enforces the implied covenant it is in essence acting to protect "the interest in having promises performed" (Prosser, Law of Torts (4th ed. 1971) p. 613)--the traditional realm of a contract action--rather than to protect some

general duty to society which the law places on an employer without regard to the substance of its contractual obligations to its employee. . . . The covenant of good faith is read into contracts in order to protect the express covenants or promise of the contract, not to protect some general public policy interest not directly tied to the contract's purposes. The insurance cases thus were a major departure from traditional principles of contract law.

765 P.2d at 393. I agree with the foregoing analysis and with the conclusion reached by the Court:

We therefore conclude that the employment relationship is not sufficiently similar to that of insurer and insured to warrant judicial extension of the proposed additional tort remedies in view of the countervailing concerns about economic policy and stability, the traditional separation of tort and contract law, and finally, the numerous protections against improper terminations already afforded employees.

765 P.2d at 396. After its careful review of the numerous California appellate decisions holding to the contrary, the California Supreme Court then reached the following holding:

. . . as to his cause of action for tortious breach of the implied covenant of good faith and fair dealing, we hold that tort remedies are not available for breach of the implied covenant in an employment contract to employees who allege they have been discharged in violation of the covenant. (Emphasis supplied.)

765 P.2d at 401. As will more fully appear in this dissent, I agree with the holding of the California Court. California joined the majority of jurisdictions in the United States which have either expressly rejected the notion of tort damages in such cases or impliedly done so by rejecting the covenant in employment at-will contracts. Under the majority opinion in this case, Montana remains one of the few, if not

14

the only jurisdiction, which would allow recovery of tort damages for a breach of the implied covenant. I conclude that such a result is inconsistent with the general principles of contract law.

III

As I review the cases of other states and compare them to Montana's cases, I believe it is essential to reanalyze our position in previous cases with regard to the covenant of good faith and fair dealing and the right of recovery in tort.

In Gates v. Life of Montana Ins. Co. (1982), 196 Mont. 178, 638 P.2d 1063, (Gates I) the majority concluded that the employee entered into an employment contract terminable at will; the employer later promulgated a handbook of personnel policies with termination procedures; the employer presumably sought to secure an orderly, cooperative and loyal work force by these uniform policies; the employee then developed the peace of mind associated with job security; and if the employer failed to follow its own policies, the peace of mind of its employees was shattered. We therefore said:

> We hold that a covenant of good faith and fair dealing was implied in the employment contract of the appellant. There remains a genuine issue of material fact which precludes summary judgment, i.e. whether the respondent failed to afford appellant the process required and if so, whether the respondent thereby breached the covenant of good faith and fair dealing.

638 P.2d at 1067. The summary judgment was reversed and the case was remanded to the lower court.

As I review that case, I find some contradictions in the opinion. We stated that the employee handbook was not a part of the plaintiff's employment contract when she was hired and could not have been a modification of her contract because

15

there was no new and independent consideration. We also stated that an employee handbook distributed after the employee is hired does not become a part of the employee's contract. These statements seem inconsistent with the holding that "a covenant of good faith and fair dealing was implied in the employment contract." We will further discuss the question of whether or not a covenant implied in the contract is in some manner contractual in nature.

In Gates v. Life of Montana Ins. Co. (1983), 205 Mont. 304, 668 P.2d 213, (Gates II), the majority again considered the same case and concluded that the jury verdict in favor of the plaintiff for $1,891 in compensatory damages and $50,000 in punitive damages should be affirmed. The majority referred to Lipinski v. Title Insurance Co. (1982), 202 Mont. 1, 655 P.2d 970, in which this Court held that punitive damages could be assessed for a bad faith insurance practice in the absence of a statutory provision. The Gates II majority further explained that an action for breach of an implied covenant of fair dealing at first blush may sound both in contract and in tort, but that the duty arises out of the employment relationship and yet exists apart from and in addition to any terms agreed to by the parties. The majority stated that the duty is much like the duty to act in good faith in discharging insurance contractual obligations and that such a duty is imposed by operation of law and its breach should find a remedy in tort. The majority referred to a 1906 Indiana case as authority. Without other significant authority the majority concluded:

> We hold that § 27-1-221, MCA, [the section which provides that in any action "not arising from contract" where the defendant has been guilty of oppression, fraud, or malice, the jury may give exemplary or punitive damages] only exempts breach of contract actions from its provisions. Breach of

16

the duty owed to deal fairly and in good faith in the employment relationship is a tort for which punitive damages can be recovered if defendant's conduct is sufficiently culpable.

668 P.2d at 215.

This is a key holding which I believe should be reexamined. As pointed out by Justice Gulbrandson in his dissent to Gates II, by allowing punitive damages the majority approved an independent tort of bad faith in at-will employment contracts whereas all other jurisdictions do so only when the determination violates public policy. In my own dissent I pointed out that Gates II was an action for the breach of the covenant of good faith and fair dealing, arising from the contract from which that covenant is implied. I pointed out that § 27-1-221, MCA, allowed punitive damages in any action not arising from contract. I suggested that it seemed clear that the breach of the contractual obligation did not justify an award of punitive damages under the express terms of the statute.

It is not appropriate in dissent to review all of the cases which have considered these theories. However, I do refer to Stark v. Circle K Corp. (Mont. 1988), 751 P.2d 162, 45 St.Rep. 371. While I joined in that opinion, as I again review the matter, I question the following conclusions reached in Stark: that the covenant is implied as a matter of law based on the public policy of this state; that it does not depend on contractual terms for its existence; that the covenant of good faith and fair dealing is not subject to contractual waiver, express or implied; and that the duty exists apart from and in addition to any terms agreed to by the parties. It is important to consider the evidence which was before the Court in Stark as compared to the present case. It is true that in Stark there was a provision by

which the employee agreed that he could be dismissed with or without cause. However, there were extensive provisions adopted by the employer including a policy guide with regard to termination, which Stark's supervisor admitted was the policy guide which applied to the termination of Stark. That guide, of course, contained many provisions with regard to the manner of termination and the just cause requirement. That should be distinguished from the present case where there is no evidence that Sears issued any similar employer provisions with regard to either just cause or termination.

As I review the cases from other states, and consider both Stark and the present case, I conclude that the type of action in both Montana cases more properly should be described as one for the breach of "an implied-in-fact contract" as described in detail in Foley. I approve of the California analysis in Foley which pointed out that such implied-in-fact contract terms ordinarily stand on equal footing with express terms; and concluded there is no analytical reason why an employee's promises to render services or his actual rendition of services may not support an employer's promise to refrain from arbitrary dismissal. The California court noted that permitting proof of and reliance on implied-in-fact contract terms does not nullify the at-will rule, it merely treats such contracts in a manner in keeping with general contract law. I agree with the conclusion of the California court which found no sound reason to exempt the employment relationship from the ordinary rules of contract interpretations which permit proof of implied terms. As a result, I conclude in both Stark and the present case that a more detailed analysis leads to a conclusion that the covenant of good faith is a part of the implied-in-fact contract and should be treated as are other contract cases.

18

It then logically follows that tort damages are not recoverable.

In our analysis of the law, we should also consider the law previously adopted in Montana as it may apply to the present case. In Keith v. Kottas (1946), 119 Mont. 98, 172 P.2d 306, we quoted from 12 Am.Jur., p. 505, which stated that there cannot be an express and an implied contract for the same thing existing at the same time so that no agreement can be implied where there is an express one existing. The Keith case has been subsequently cited in Weston v. Montana State Highway Commission (1981), 186 Mont. 46, 606 P.2d 150 and McNulty v. Bewley Corporation (1979), 182 Mont. 260, 596 P.2d 474. This same theory is more clearly restated in 17 Am.Jur.2d 649 as follows:

> Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed. . . . Therefore, whatever may fairly be implied from the terms or nature of an instrument is, in the eyes of the law, contained in it.

In addition, this authority states at 17 Am.Jur.2d 652:

> No meaning, terms, or conditions can be implied which are inconsistent with the expressed provisions. Expressed stipulations cannot, in general, be set aside or varied by implied promises. In other words, a promise or covenant is not implied where there is an express written contract provision covering it.

Clearly this contradiction between the theory of an implied covenant and the existing written contract provision should be considered. Here we have a clear and unambiguous express contract which negatives the idea of an implied covenant. Both Foley and Wagonseller point out that many jurisdictions

19

in consideration of the Sears form of contract have refused to allow any form of implied covenant.

I would therefore conclude that the covenant of good faith and fair dealing in Montana is an implied-in-fact portion of the contract itself which is subject to general contract analysis under the law of Montana. I would also conclude that any violation of such an implied-in-fact covenant allows recovery only of contract damages and that punitive damages are not recoverable.

IV

In the present case, the District Court concluded that the plaintiff's claims were precluded as a matter of law by the language of the contract because that language in clear and unequivocal terms notified the plaintiff that her employment could be terminated at any time and for any reason, and therefore defeated the claims asserted by the plaintiff. The majority has chosen not to address this fundamental legal issue, instead returning the case to the lower court because of the claimed presence of material issues of fact precluding summary judgment. I disagree with that procedure.

Here we have facts which are significantly different from Gates I or Stark. In both of those cases there had been extensive conduct by the employer from which the covenant of good faith properly could be implied. Here, there is no evidence of conduct of that nature on the part of the employer. In addition, we have the specific contractual limitation which provides that no representative of Sears other than the president or vice president has any authority to modify the written contract which allows termination with or without notice, at any time. Neither Gates I nor Stark had a similar contract provision. Here Prout agrees that there was no modification of the written contract by the authorized officers of Sears. Under the facts presented for consideration

20

at summary judgment, I do not conclude there is a material issue of ultimate fact which has been presented by the plaintiff.

In accordance with the Foley analysis, I would add that there has been no violation of public policy which justifies a tort theory of recovery. I would therefore conclude that the District Court should be affirmed because Prout's claims are precluded as a matter of law by the language of the contract between the employer and the employee, and because of the absence of any violation of public policy.

_____
Justice

Chief Justice J.A. Turnage and Justice L. C. Gulbrandson concur in the foregoing dissent.

_____
Chief Justice

_____
Justice

21

TAMMY PROUT,
        Appellant,

    v.

SEARS, ROEBUCK AND COMPANY
and TERRY McGINNIS,
        Respondents.

)  AMENDMENT TO
)  DISSENT WHICH IS
)  PART OF OPINION
)  IN ENTITLED CAUSE
)  DATED AND FILED
)  APRIL 27, 1989

        Subsequent to this opinion, Sears filed a petition for rehearing. In that petition, Sears argues that the majority's emphasis on factual issues contained in the pretrial order is erroneous. This is because the interpretation of the pretrial order had not been suggested by either party, was not considered by the District Court in granting summary judgment, and is a matter which first appears in the majority opinion as the basis for reversal.

        The basic issue presented to the District Court and to this Court on appeal was whether the language of the employment contract and the employee record card, without evidence of modification, precluded the plaintiff's claims as a matter of law so that summary judgment was proper? Based on the evidence before it, the District Court concluded that the plaintiff's claims were precluded as a matter of law and that no material issues of fact existed which would render a granting of summary judgment improper. A review of the materials before the court reveals no facts alleged by the plaintiff that she had developed any sense of job security or that her at-will employment contract had been modified in any way, either expressly or impliedly. The contested facts regarding Tammy Prout's conduct, her treatment, or Sears' timekeeping policies were contained in the pretrial order and were expressly reserved pending the motion for summary judgment. I conclude that it was improper for this Court to have

ignored the basic inquiry as to whether plaintiff's claims were precluded as a matter of law, and to focus instead on factual issues in the pretrial order which were secondary to the pending motion. Whether Sears is entitled to a rehearing on the matter is governed by Rule 34, M.R.App.P.

Rule 34(2), M.R.App.P., provides that a party is entitled to a rehearing if it can show that the Court has overlooked any questions decisive of this case. By deciding the propriety of summary judgment based upon factual issues presented in the pretrial order which were understood to be reserved pending the motion, the majority has indeed overlooked the basic inquiry in this case: whether the plaintiff's claims were precluded by the at-will employment contract which she signed, which remained unmodified, and to which there had been no factual allegations of job security. Had the majority squarely addressed this issue, I do not see how it could have reached the result in this opinion.

I would grant Sears' petition for rehearing and allow reconsideration of this case without interpreting the pretrial order. The basic inquiry as to whether plaintiff's claims are precluded as a matter of law should be addressed in deciding whether summary judgment was proper.

_____
Justice

Mr. Justice L. C. Gulbrandson joins in the foregoing amendment to the dissent.

_____
Justice

Mr. Chief Justice J. A. Turnage joins in the foregoing amendment to the dissent.

_____
Chief Justice

23

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 88-117

TAMMY PROUT,

Plaintiff and Appellant,

v.

SEARS, ROEBUCK AND
COMPANY, and TERRY
McGINNIS,

Defendant and Respondent.

)
)  O R D E R
)

The petition for rehearing is denied.

DATED this _2ed_ day of ~~April~~ May, 1989.

_[signature: John Conway Harrison]_

_[signature: John C. Sheehy]_

_[signature: R.C. McDonough]_

Justices

_[signature: Frank I. Haswell]_

Hon. Frank I. Haswell, Retired
Chief Justice, sitting in place
of Mr. Justice William E. Hunt

Mr. Justice Fred J. Weber, Mr. Justice L.C. Gulbrandson,
and Mr. Chief Justice J.A. Turnage would have granted the petition
for rehearing and have modified their dissent to address issues
raised in the petition for rehearing.