JUSTICE NELSON
dissents.
¶26 I dissent from the Court’s decision.
¶27 First, all of our discussion of VSP’s ability to terminate the agreement on 90 days notice without cause-a topic to which VSP also devotes substantial ink in its briefs-is irrelevant. VSP did not terminate Hardy’s membership on this basis, but rather, it did so under the provision of the agreement that required good cause. Like VSP’s arguments on appeal, the Court’s attempt to seamlessly weave the two bases together, one theory supporting the other in a sort of legal symbiosis, simply muddles what is actually at issue herewvhether there were genuine issues of material fact which precluded summary judgment on Hardy’s claim that he was not in violation of the agreement when his membership was terminated.
¶28 A review of the record reveals that there were genuine issues of material fact on this issue; that Hardy was entitled to have these issues resolved by a jury; and that the District Court’s short-circuiting of the trial process and our affirmance of that improperly denies Hardy his day in court.
¶29 Hardy’s defense of VSP’s summary judgment motion clearly demonstrated the existence of these genuine issues of material fact.
¶30 In granting VSP’s motion for summary judgment, the court held:
Condition E of the Member Doctor Agreement requires Hardy to maintain complete control of his practice. However, Hardy’s franchise agreement requires him to surrender control of many aspects of his practice to Pearle Vision.
The court failed to acknowledge Hardy’s affidavit which stated:
While I conduct business utilizing Pearle Vision advertising *393 and marketing assistance, I own and fully control my practice and dispensary. I am strictly required, under my Pearle Vision franchise agreement, to “make it clear that [I am] an independent contractor and not in any way an agent, employee, partner or joint venturer” with Pearle. While my franchise agreement requires me to adhere to standards of quality and good practice, I am solely financially and professionally responsible for my work. Although VSP asserts that Pearle exerts “control” over my practice, it never has in fact. Moreover, every optical dispensary which carries national lines of eyewear is subject to restrictions and standards for inventory, marketing and such things as lense fabrication and installation. This certainly includes dispensaries owned by VSP member doctors in good standing. [First emphasis added.]
¶31 In regard to the matter of control, VSP’s designated corporate representative, Cheryl Johnson, testified on deposition that the member doctor agreement had been construed by VSP’s quality assurance committee. Johnson testified:
Q. MR. SEIFERT: Returning now to your Declaration, Exhibit 10, I would like to continue on and ask you some things about that document.
Paragraph 12, which appears on page 6 at the top of page 6, towards the end of that paragraph it recites, ‘In 1993, the Quality Assurance Committee of the Board passed a motion noting that ‘VSP’s use of the language ‘control and ownership’ are synonymous.’”
What does that mean?
A. It means that the language control and ownership mean the same thing.
Q. So if you own, you control?
A. For this purpose.
Q. And by “this purpose” what do you mean?
A. Our Member Doctor Agreement and our office standards.
¶32 While the District Court, and our Opinion, conclude that Hardy “ceded” aspects of control of his practice to Pearle under his franchise agreement, Johnson’s testimony established compliance with the “control” requirement. It was uncontradicted that Hardy owned his own practice and, thus, under VSP’s own criteria, also controlled it.
¶33 Johnson also testified thatthe “complete control” defined by VSP’s Motion for Summary Judgment exists nowhere, in fact, in VSP’s member network. She testified that VSP member doctors are required *394 to purchase and market VSP’s own line of Altair eyewear. Thus, if VSP regards Pearle’s marketing standards as “control” it must itself agree that every VSP doctor required to sell Altair eyewear also lacks “complete control” and, thereby, are in violation of the VSP franchise agreement, Condition E.
¶34 Furthermore, Johnson admitted in her deposition that other VSP franchisees carry lines of merchandise or eyewear that are accompanied by restrictions on the method and manner in which they are advertised, displayed and marketed. Johnson’s deposition reveals that while she tried to avoid the issue every way possible, VSP’s concept of “complete control” depends totally upon who VSP wants to apply the requirement against and under what circumstances.
¶35 Finally, in defense against VSP’s Motion for Summary Judgment, Hardy demonstrated that hundreds of other Pearle and so called “chain” providers were allowed to retain VSP membership when he was not; that he did not violate Condition E; that there was insufficient evidence supporting VSP’s claim that Condition E was to protect against “suspect” quality of care provided by “chains;” that VSP has never before terminated the panel membership of a doctor on grounds that it could do so “without cause” or ‘Tor any reason;” and that while VSP’s claim that Hardy lacked “control” over his practice, referring to “suspect” standards of care and violation of Condition E, VSP’s real motive was to serve the economic, competitive interests of its so called ‘independent practitioners” by excluding “chain” doctors from its dominate national network. Indeed, VSP’s company periodicals demonstrated management’s concern over loss of “market share” to “chains” and that Condition E was really created to “competitively assist”its “private” member doctors.
¶36 In this latter regard, Johnson testified on deposition:
Q. MR. SEIFERT: Is another motivation of VSP for utilizing Condition E to competitively assist its independent providers?
A. I don’t know that I would use the word competitively assist, but given that is the network that VSP has and we are promoting that network, that’s the purpose.
Q. Would it be accurate to say that one of its purposes, and by it I am referring to Condition E, is to facilitate the economic or business success of its independent providers?
A. Yes.
¶37 Hardy demonstrated that VSP knowingly allows, under various pretexts, approximately 235 “chain” doctors to be VSP members. Notwithstanding, in Hardy’s case, VSP eliminated his membership *395 because he lacked “complete control” over his practice.
¶38 At ¶ 14 of our Opinion, the Court cites Farris v. Hutchinson (1992), 254 Mont. 334, 838 P.2d 374, conceding, as it must, that where the employer terminates an employee for cause, the employee must have an opportunity to prove that the stated cause was false. Indeed, we relied upon Stark v. Circle K Corp. (1988), 230 Mont. 468, 751 P.2d 162, and Prout v. Sears, Roebuck and Co. (1989), 236 Mont. 152, 772 P.2d 288, noting that in both cases the discharges were for cause and that it was, therefore, for the jury to decide the factual issue of whether the stated reasons were true or not. Farris, 254 Mont. at 339, 838 P.2d at 377. That is precisely the situation presented here. The termination of Hardy’s membership was for cause stated-his lack of control over his practice. VSP’s and our attempts to muddy the water to the contrary, Hardy was not discharged under the without-cause provisions of the membership agreement.
¶39 Hardy put more than sufficient evidence before the court in his defense against VSP’s Motion for Summary Judgment to establish that there are genuine issues of material fact as to the real reason why VSP terminated his membership for cause. It is up to the jury, not the trial court, nor this Court on appeal, to adjudicate the validity of those reasons or to determine questions of good faith at issue in this cause. Those are questions for the jury.
¶40 Our decision here ignores Farris, Stark and Prout and denies Hardy his rightful day in court.
¶41 I would reverse the District Court’s Order granting VSP’s Motion for Summary Judgment and would remand for trial.
¶42 I dissent from our failure to do so.
JUSTICE COTTER joins in the dissent of JUSTICE NELSON.